Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

1006321606

VMP-8R (0411)                          Page 2 of 3          Initials: _____          Form 3140  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)          _____ (Seal)
MARY M. MAYOTTE          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower

1006321606

-8R (0411)                 Page 3 of 3                 Form 3140  1/01

# ADJUSTABLE RATE NOTE

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

February 13, 2005                    Denver                    Colorado
[Date]                               [City]                    [State]

23 SOUTH GARFIELD ST, Denver, CO  80209
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $481,650.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.650 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on April 1, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 03/01/2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA 92612

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $3,754.80. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

1005321606

---

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family - Fannie Mae UNIFORM INSTRUMENT

-838N (0210)

Form 3520 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4          Initials:

 

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of March, 2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And Three Tenth(s) percentage points ( 6.300 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.150 % or less than 8.650 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One And One-half percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 15.650 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

1006321606

Form 3520 1/01

 

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(A) Late Charges for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   **(B) Default**

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   **(C) Notice of Default**

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   **(D) No Waiver By Note Holder**

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   **(E) Payment of Note Holder's Costs and Expenses**

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

   I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

   This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

1005321606

Form 3520 1/01

Initials: ___

 

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
MARY M. MAYOTTE                -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                              -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                              -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                              -Borrower                                    -Borrower

[Sign Original Only]

1006321606

# PREPAYMENT RIDER
## ADJUSTABLE RATE LOAN

This Prepayment Rider is made this 13th   day of February     2006     , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

New Century Mortgage Corporation                                               (the "Lender"),

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

**5.  BORROWERS RIGHT TO PREPAY**

I have the right to make prepayments of principal any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing I am doing so. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.

If within  2  year(s) from the date of execution of the Security Instrument, I make a full prepayment or, in certain cases a partial prepayment, and the total of such prepayment(s) in any 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of 6 months advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____          _____
MARY M. MAYOTTE

_____          _____

_____          _____

_____          _____

NCMC
Prepay Rider – ARM (Multistate)                     Page 1 of 1
RE-103    (020800)

1006321606

EXHIBIT A

ALL THE REAL PROPERTY, TOGETHER WITH IMPROVEMENTS, IF ANY,
SITUATE, LYING AND BEING IN THE COUNTY OF DENVER AND STATE
OF COLORADO, DESCRIBED AS FOLLOWS:

UNIT 38, CARRIAGE ROW AT CHERRY CREEK, CITY AND COUNTY OF
DENVER, STATE OF COLORADO, ACCORDING TO THE CONDOMINIUM MAP
THEREOF RECORDED ON DECEMBER 13, 1996, AT RECEPTION NO.
9600170672, AND THE DECLARATION RECORDED IN FEBRUARY 5,
1996, AT RECEPTION NO. 960015196, AND AS AMENDED IN
INSTRUMENT RECORDED JUNE 26, 1996 AT RECEPTION 9600088649,
AND AS AMENDED IN INSTRUMENT RECORDED DECEMBER 13, 1996
UNDER RECEPTION NO. 9600170671 IN THE RECORDS OF THE CLERK
AND RECORDER OF THE CITY AND COUNTY OF DNEVER, COLORADO, AS
AMENDED FROM TIME TO TIME.

TOGETHER WITH ALL AND SINGULAR AND HEREDITAMENTS AND
APPURTENANCES THERETO BELONGING, OR IN ANYWISE APPERTAINING
AND THE REVERSION AND REVERSIONS, REMAINDER AND REMAINDERS,
RENTS, ISSUES AND PROFITS THEREOF; AND TO ALL ESTATE, RIGHT
TITLE INTEREST, CLAIM AND DEMAND WHATSOEVER OF THE
GRANTOR(S), EITHER IN LAW OR EQUITY, OF, IN AND TO THE
ABOVE BARGAINED PREMISES, WITH THE HEREDITAMENTS AND
APPURTENANCES.

SUBJECT TO GENERAL TAXES AND ASSESSMENTS FOR THE YEAR 1999
AND SUBSEQUENT YEARS, AND SUBJECT TO THOSE EXCEPTIONS
REFERRED TO IN TITLE INSURANCE COMMITMENT NO. D694298
ISSUED BY LAND TITLE GUARANTEE COMPANY.

ADDRESS: 23 S GARFIELD ST; DENVER, CO 802093115 TAX MAP
OR PARCEL ID NO.: 05125-13-046-046



**ASC**
AMERICA'S SERVICING COMPANY
Return Mail Operations
P.O. Box 10388
Des Moines, IA 50306-0388

NOTE MODIFICATION

1100191411

THIS NOTE MODIFICATION made on January 29, 2008, by ASC
whose address is 3480 Stateview Blvd., Fort Mill, SC 29715 ("Servicer")
to modify the Adjustable Rate Note dated 02-21-06 in the original
amount of $ 481,650 bearing an Initial Interest rate of 8.650000%
PERCENT PER ANNUM ("Note"). The Note is secured by a Mortgage, Security
Deed, Deed of Trust, or Deed to Secure Debt ("Security Instrument") of
the same date, made by BORROWERS. The defined terms in the Note shall
have the meaning in this Agreement.

The parties to this Agreement agree as follows:

1. Section 4 is modified as follows: The initial interest rate as
   shown on the Note shall remain un-adjusted for five years from the
   date of the loan's initial interest rate change date. At the
   expiration of the five year period, the interest rate will adjust
   based on the original terms of the Note.

2. Nothing in this agreement shall be understood or construed to be a
   satisfaction or release in whole or in part of the Note or Security
   Instrument. Except as specifically provided in this agreement, the
   Note and Security Instrument will remain unchanged, and the Borrower
   and Servicer will be bound by, and comply with, all the terms and
   provisions thereof, as modified by this Agreement.
   (a) All the rights and remedies, stipulations, and conditions
   contained in the Security Instrument relating to default in the
   making of payments under the Security Instrument shall also apply to
   default in the making of payments under the Note and this agreement.
   (b) All covenants, agreements, stipulations and conditions in the
   Security Instrument shall be and remain in full force and effect,
   except as herein modified, and none of the BORROWERS' obligations or
   liabilities under the Security Instrument shall be diminished or
   released by any provisions hereof nor shall this Agreement in any
   way impair, diminish, or affect any of the Servicer's rights under or
   remedies on the Security Instrument, whether such rights or remedies
   aries there under or by operation of law. Also, all rights of
   recourse to which the BORROWERS are presently entitled against any
   property or any other person in any way obligated for or liable on
   the Security Instrument are expressly reserved by the Servicer.

America's Servicing Company

_Mary M. Mayotte_          2-18-08
Mary M Mayotte                              Date

_____          _____
                                            Date

AR502/NDS

Wells Fargo Home Mortgage, doing business as America's Servicing Company,
is a division of Wells Fargo Bank, N.A. (C)2008 Wells Fargo Bank, N.A.
All rights reserved. Equal Housing Lender.

10

THIS DOCUMENT IS INTENDED TO HAVE REAL CONSEQUENCES FOR THE PARTIES HERETO

<u>\*\*\*NOTICE\*\*\*</u>

MARY MAYOTTE
23 S. Garfield St.
Denver, CO 80209                                           July 12, 2013

**TO: ASC/WELLS FARGO BANK, N.A., In any Capacity it may hold.**
**Attn: CEO**
**AMERICAS SERVICING COMPANY**

Via Certified Mail c/o Office of Executive Complaints-Amanda King and/or Tammy Cook, Angie Olson *Article #*
PO Box 10388
Des Moines, IA 50306-0388
*Via fax to Amanda King, Tammy Cook, Angie Olson office of Executive Complaints*
Re: Mary Mayotte
RE: Loan Number: 1100191411
DOT INSTRUMENT NO: 2006033470
Trustee's Sale Nº: 2010-4534
Property Address: 23 S. Garfield St. Denver, CO 80209

### NOTICE OF DISPUTE OF DEBT AND DEMAND FOR VERIFIED DEBT VALIDATION PURSUANT TO THE FAIR DEBT COLLECTIONS PRACTICES ACT (15 U.S.C § 1692f(6) *et seq*) AND THE COLORADO FAIR DEBT COLLECTIONS PRACTICES ACT COLORADO CIVIL CODE C.R.S. 12-14-101 *et seq.*

1. This NOTICE is on and for the private and public record.

2. This NOTICE pertains to the above referenced "Loan Number: 1100191411"

3. As used herein the term "Loan" means an allegation that A) an asset was lent to benefit Mary Mayotte, B) Mary Mayotte is liable for return or repayment of the asset, C) repayment or return of the asset is either past due or will come due, and D) Mary Mayotte is liable for a past due payment that is owed.

4. As used herein the word "Verification" means a written declaration by a man or woman with first-hand personal knowledge (i.e. non-hearsay pursuant to Federal Rules of Evidence § 802) affirmed or sworn to be true and correct and executed in the presence of an authorized officer (See "VERIFICATION", *Page 4833, Black's Law Dictionary, 8th Ed*). Also referred to herein as "Verified" or "Verify." Note: Legal substitutes will not be accepted (i.e.: 28 U.S.C. § 1746).

5. This demand does not constitute refusal to pay a debt. It is a demand for Verification that a valid debt exists, as well as assurance that any future payment by Mary Mayotte for any Verified valid debt is tendered to a bona fide creditor.

THIS DOCUMENT IS INTENDED TO HAVE LEGAL CONSEQUENCES FOR THE PARTIES HERBY

6. Mary Mayotte disputes any debt is due to US Bank National Association, as Trustee for The Structured Asset Investment Loan Trust, 2006-4.

7. Demand is hereby made for Verification of the following about an alleged Loan:

   A. The unpaid balance of Loan;

   B. The name and address of the original creditor;

   C. The name and address of the current creditor.

8. Demand is hereby made to cease and desist the following until the above demanded (i.e. ¶ 6 A.-C. above ) are provided:

   A. All Loan collection activities;

   B. Attempts to contact Mary Mayotte about Loan other than as demanded herein;

   C. Communication to third parties of Loan information adverse to Mary Mayotte;

9. Responses to this NOTICE need to be delivered to Mary Mayotte via the above provided address AND entered into the Court's register of ACTION.

10. Please complete this request within thirty (30) days from the date of this NOTICE, but sooner if possible. An extension of time may be requested by writing Mary Mayotte a Verified extension request that includes the name, address and telephone number of the man or woman who is the requestor and the good cause for the request.

11. A failure to respond to this NOTICE as demanded herein shall be accepted as a fault to this Notice [Colorado Revised Statutes §4-1-201(16) ("Fault").

12. Fault to NOTICE will be accepted by Mary Mayotte as agreement by tacit procuration or acquiescence by silence to the following:

   A. US Bank National Association, as Trustee for The Structured Asset Investment Loan Trust, 2006-4 did not receive the rights to the Deed of Trust within the scope of US Bank as Trustee for The Structured Asset Investment Loan Trust, 2006-4's formative documents and is operating *ultra vires.*

   B. Mary Mayotte has fully, honorably and timely satisfied all Loan related duties and

THIS DOCUMENT IS INTENDED TO HAVE LEGAL FORCE OR EFFECT UPON THE PARTIES HERETO

obligations;

C. No real party in interest or oblige of a Loan about which Mary Mayotte is an obligor exists and future assertions to the contrary are without merit.

D. There is no defect with this NOTICE.

No issue of controversy or fact exists in re Loan, Mary Mayotte or this NOTICE exists for all such issues of controversy and fact have been settled and closed in favor of Mary Mayotte *res judicata* and *stare decisis*.

**NOTICE IS GIVEN**
**GOVERN YOURSELF ACCORDINGLY**

Dated: July 12, 2013
All rights reserved

By: _Mary M. Mayotte_
Mary M. Mayotte

July 12,2013

ASC/Wells Fargo C/O Amanda King and/or Tammy Cook, Angie Olson
Office of Executive Complaints
PO Box10388
Des Moines, IA 50306-0388

Via Fax and Certified Mail USPS Return – Receipt

**Re: Mary Mayotte**
**Loan Number: 1100191411**
**Property Address: 23 South Garfield Street    Denver CO 80209**

Dear Madam:

In accordance with RESPA and Section 131(f) of the Truth-in-Lending Act, 15 U.S.C. Section 1641(f) (2), please provide me with the name, address, and telephone number of the owner of the Promissory Note signed by me and secured by the deed of trust in my mortgage loan referenced above.

Additionally, please provide me with copies of the Note (including indorsements), Deed of Trust (including assignments or transfers), and an audited accounting for the above referenced loan Number.

I deny that the alleged U.S. Bank National Association, as Trustee for The Structured Asset Investment Loan Trust, 2006-4 received this asset within the terms of the Pooling and Servicing Agreement that governs U.S. Bank National Association, as Trustee for The Structured Asset Investment Loan Trust, 2006-4.

By their signatures below, I authorize you to furnish me with the requested information, and any other information regarding my account and my mortgage loan.

You should be advised that you must acknowledge receipt of this request within five (5) business days, and respond within thirty (30) business days, pursuant to 12 U.S.C. Section 2605(e) (1)(A) as amended effective July 16, 2010 by the Dodd-Frank Financial Reform Act and Reg. X Section 3500.21(e)(1).

Thanking you in advance, I am
Very truly yours,

Mary Mayotte



**ASC**
AMERICA'S SERVICING COMPANY

PO Box 10328
Des Moines, IA 50306-0328

October 18, 2013

Mary M. Mayotte
23 S. Garfield St.
Denver, CO 80209

Dear Mary M. Mayotte:

RE:     Loan Number 106-1100191411

I am responding on behalf of America's Servicing Company (ASC) to the above referenced inquiry filed with the Office of Senator Bennet and U.S. Bank, N.A., which were forwarded to our office.

ASC recognized you are disputing the validity of the mortgage loan for the property located at 23S Garfield Street, Denver, Colorado, which secures the above referenced mortgage loan. As you are questioning the validity of the debt, you also believe the foreclosure action is invalid.

Our records indicate that you closed on a 30 year, Adjustable Rate Note, mortgage loan with, on February 13, 2006, with New Century Mortgage Corporation. The Note required the repayment of $481,650.00, at an initial interest rate of 8.650%, in 360 monthly installments beginning on April 01, 2006, and end on March 01, 2036. Enclosed is a copy of the Note you executed for your reference. No endorsements are present as this copy was made at the time of origination and not after any sale of the note to an investor.

New Century Mortgage Corporation currently maintains a principal office at:

18400 Von Karman, Suite 1000
Irvine, CA 92612

At the closing of the real estate loan, you signed the Deed of Trust, which acknowledges your understanding of the terms of the loan. Covenant 20 advised you that the servicing of your mortgage loan may be transferred. In additional you also signed a Servicing Disclosure advising you that the loan could be transferred. Enclosed is a copy of the recorded Deed of Trust for your reference.

New Century Mortgage Corporation continued to hold the mortgage lien on behalf of the beneficial note holder and servicer, until the title needed to be reflected in the Note holder's name, such as at the time of payoff, or if a foreclosure action was initiated.

The servicing for this loan was transferred to ASC on June 01, 2006. ASC did not originate the loan; therefore, cannot speak about origination transaction. ASC services the loan according to the documents that you signed at the loan closing. However, ASC does dispute any allegations of predatory lending during our servicing of the loan.

RESPA guidelines require that borrowers are provided with notification of a transfer of servicing within 15 days after the effective date of the transfer. Our records indicate that a welcome letter was forwarded to you on June 13, 2006, 13 days after the servicing transfer occurred and prior to the 15 day RESPA requirement.

Mayotte
October 18, 2013
Page 2

Enclosed is our response sent to you on July 31, 2013. This previous correspondence also addresses the matters you presented in your letters to the Office of Senator Bennet and U.S. Bank, N.A.

Our records reflect an acceleration notification was issued on August 17, 2008. This notice advised the loan needed to be brought current by September 16, 2008, or we would accelerate the Note.

On September 29, 2008, the loan was referred to outside counsel to initiate foreclosure proceedings. The foreclosure action was a direct result of the loan being due for the July 01, 2007, through September 01, 2008, mortgage payments.

ASC received notification of a bankruptcy filing on June 07, 2011. As a result we have updated our records to reflect that Chapter 7 Bankruptcy case number 11-12486 was filed by Mary M. Mayotte on May 24, 2011. Accordingly the foreclosure action was suspended.

On December 27, 2011, a Corporate Assignment of the Deed of Trust to U.S. Bank National Association, as trustee for structured asset investment loan trust mortgage pass through certificates, series 2006-4 at 4801 Frederica Street, Owensboro, KY 42301, was recorded in the Denver County records as instrument number 2011146583. Enclosed is a copy of the recorded Corporate Assignment of the Deed of Trust for your reference.

U.S. Bank, N.A., is not the investor on the mortgage loans, but the trustees for the pool of loans being held by the investors. In their capacity as the trustees they distribute revenue generated from the pool to the rightful parties. U.S. Bank, N.A., is bound to the trust and not the loans in the pool; therefore, they have no authority to approve or deny a modification on any of the loans in the pools.

The mortgage debt was discharged through the bankruptcy on November 22, 2011, with no reaffirmation agreement being filed. The mortgage loan was eligible to be removed from bankruptcy processing on April 27, 2012.

As the bankruptcy stay was no longer in place ASC could again accelerate the mortgage. ASC instructed our attorney to resume the foreclosure proceedings on May 19, 2012. At the time the mortgage loan was due for the February 01, 2009, through May 01, 2012, mortgage payments.

ASC acknowledges your request to cease and desist all collection activity on the loan, including the ongoing foreclosure action. We service our mortgage loans in accordance with all state and federal guidelines, as well as the original documents signed at closing.

The mortgage loan record has been updated with your request to cease all regular collection calls and letters. This will be effective for the life of the loan, or until you rescind this request.

Although the mortgage debt was discharged through a Chapter 7 Bankruptcy, you still have an interest in the physical property secured by the mortgage loan. As a result, ASC is required to notify you of any action taken regarding the physical property, such as the foreclosure action; therefore, foreclosure notices will continue.

ASC has received your correspondence dated September 05, 2013, indicating that attorneys Daniel Haskell and David Wander of Davidoff Hutcher and Citron no longer represent you with regards to the foreclosure action; therefore, you wish ASC to discontinue communicating with them regarding the mortgage loan. Our office is unable to remove the controls placed on the loan when we received notification of their representation without receiving notification from their office, on their letterhead, that they no longer represent you.

If you have received a discharge and the loan was not reaffirmed in the bankruptcy case, we will only exercise our rights against the property and are not attempting any act to collect the discharged debt from you personally.

EX003/o7g/co847921



Mayotte
October 18, 2013
Page 3

Enclosed is a Customer Account Activity Statement (CAAS). The CAAS reflects a complete payment history for the period of March 01, 2006, through the date of this letter. The CAAS references when payments were received, how they were applied to the loan, and any distributions made from the loan. The CAAS provides a description for each transaction and running balances of the unpaid principal, escrow, unapplied, and outstanding fee accounts. It also includes the date fees and charges were assessed, any amounts paid toward these fees, and waivers/reversal of these fees. Late Fees are reported on the annual mortgage statement. The Unapplied Balance column references the funds that may have been placed into the unapplied account. Payments can be placed into the unapplied account if the funds received do not represent the full monthly mortgage payment due, or if ASC is not informed of where the payment is to be applied.

As of the date of this letter, the loan is due for the February 01, 2009, through October 01, 2013. The loan is in active foreclosure with a scheduled sale date of January 30, 2014. In some cases, until we receive a completed loan modification application package or other arrangements are made, collection activities, including the foreclosure process, may continue.

We have responded to this request on numerous occasions. We consider this matter closed.

If you have any additional questions or need clarification regarding the information provided in this letter, please contact me directly at 1-866-416-5896, extension 42331. I am available to assist you Monday – Friday, 8:00 a.m. to 5:00 p.m. Central Time.

Sincerely,

Angie Olson
Executive Mortgage Specialist
Customer Care and Recovery Group

Enclosures

CC/Enc:        Attention: Sebastian Dawiskiba
               Office of U.S. Senator Michael Bennet
               1127 Sherman Street, Ste. 150
               Denver, CO  80203

If you have received a discharge and the loan was not reaffirmed in the bankruptcy case, we will only exercise our rights against the property and are not attempting any act to collect the discharged debt from you personally.

EX003/07g/co847921

July 12, 2013

Americas Servicing Company (and or)
Wells Fargo Bank, N.A.,
P.O.Box 10388
Des Moines, IA 50306-0388
Via U.S.P.S Certified Mail, Article No:_____
Via Fax 1866-590-8910  Amanda King, Tammy Cook, Angie Olson
CC:
Debra Johnson,
Denver County Public Trustee
201 W. Colfax Avenue, Dept. 101
Denver, CO 80202
Via U.S.P.S Certified Mail, Article No:_____

RECEIVED
DENVER PUBLIC TRUSTEE
2013 JUL 12  PM 3:40

**Re: Mary M. Mayotte**
Trustee Sale No: 2010-4534
Deed of Trust No: 2006033470
Loan Number:  1100191411
Property Address: 23 S. Garfield Street, Denver, CO 80209

## Notice and Demand for Cancellation of Trustee Sale for Due Process Violations

Dear Madam or Sir:

In consideration of the recent case in Colorado involving U.S.Bank, (12-CV-02716-WJM) and the injunction granted therein, I hereby demand the foreclosure sale currently scheduled with the Denver County Public Trustee Debra Johnson as Trustee Sale No: 2010-4534

Specifically Colorado Revised Statute §38-38-101(6) and the attorney "certification" as "proof" of "holder in due course provisions therein are a violation of Due Process. Due Process as is protected by the Constitution of the United States of America at the14th amendment has occurred. The aforementioned position is more fully explained with Exhibit "A" attached hereto, and incorporated herein.

Based on the foregoing, I demand the Americas Servicing Company, Wells Fargo Bank, N.A., and the Denver County Public Trustee Cancel the Foreclosure Sale scheduled as Trustee Sale No: 2010-4534.

Very truly yours,

Mary Mayotte, All Rights Reserved.

### EXHIBIT "A"

## COLORADO LAW WITH RESPECT TO FORECLOSURES SUMMARY

1. Under current law, a foreclosing party may choose to file a Rule 120 foreclosure either: (1) with competent evidence that it is the holder of the evidence of debt, with authority to invoke the power of sale contained in the deed of trust, or, in the alternative, (2) with a certification that it is a qualified holder of the evidence of debt, or a statement by an attorney that it's client is a qualified holder of the evidence of debt. The former is referred to herein as a "full-doc" foreclosure, the latter as a "no-doc" foreclosure.

2. The proposed Initiative would leave intact Colorado law that allows "full-doc" foreclosures, and would embody statutory "full-doc" foreclosure requirements in the Constitution. It would not interfere in any way with foreclosures filed by parties who have the requisite documentation for a "full-doc" foreclosure. On the other hand, the proposed Initiative would constitutionally prohibit "no-doc" foreclosures in Colorado, and repeal current statutory provisions that allow "no-doc" foreclosures. It would require parties who attempt to foreclose to "get their docs in a row" before attempting to foreclose on a Colorado homeowner.

### 1. Constitutional Bases

3. Article I of the Constitution of the State of Colorado is nothing more – and nothing less – than a legal description of the boundaries of the State, as follows:

### Article I

The boundaries of the state of Colorado shall be as follows: Commencing on the thirty-seventh parallel of north latitude, where the twenty-fifth meridian of longitude west from Washington crosses the same; thence north, on said meridian, to the forty-first parallel of north latitude; thence along said parallel, west, to the thirty-second meridian of longitude west from Washington; thence south, on said meridian, to the thirty-seventh parallel of north latitude; thence along said thirty-seventh parallel of north latitude to the place of beginning.

4. Article XIV, Section 1 adopts the Counties of the Territory of Colorado as the Counties of the State of Colorado, and Article XIV, Section 8 requires each County to elect a County Clerk, who shall be the ex officio Recorder of Deeds for the County. Official records of ownership of real property within the boundaries of the State of Colorado – from Territorial Days to the present – are, accordingly, maintained in County Clerk and Recorder offices, under authority of the State Constitution.

5. The statutory "full-doc" foreclosure provisions – which have been in effect in some form for more than a century prior to the recent enactment of the "no-doc" foreclosure provisions – complement the Constitutionally mandated records of real property ownership by requiring a foreclosing party to produce records of any assignments of interests in a

homeowner's property, to assure the foreclosing party has a right to invoke the power of sale contained in a recorded deed of trust, in the constitutionally grounded records of ownership at the County Clerk and Recorder's office in the County in which the property is located. The recently enacted "no-doc" provisions, in contrast, require no such proof.

## 2. Current Statutory Requirements for "Full-Doc" Foreclosure

6. Under C. R. S. §§38-38-100(3) and 38-38-101, a "holder of evidence of debt" or its attorney may file a foreclosure with:

(1) ". . . [t]he original evidence of debt, together with the original endorsement or assignment thereof, if any, to the holder of the evidence of debt . . .," (C. R. S. §38-38-101(1)(b)), or ". . . a certified copy of the endorsement or assignment [of the evidence of debt] recorded in the county where the property being foreclosed is located. . .". C. R. S. §38-38-101(1)(b) and (6)(a) (incorporated by reference in 38-38-101(1)(b)); and

(2) ". . . [t]he original recorded deed of trust securing the evidence of debt . . ." (C. R. S. §38-38-101(1)(c)) or a ". . . certified copy of the recorded deed of trust . . . .". C. R. S. §38-38-101(1)(c)(I).

See C. R. S. §38-38-101(1) & (6) (emphasis added).

7. A foreclosing party who meets these requirements, with original or certified copies of recorded documents that show evidence of title and valid assignments of the note to that party, would presumably meet it's burden of showing that it is a real party in interest [Goodwin v. District Court, 779 P.2d 837, 842-843 (Colo. 1989)) by producing evidence that it currently holds legal title to the note (Platte Valley Savings & Loan v Crall, 821 P.2d 305, 307 (Colo. App. 1991); American Surety Co. v. Scott, 63 F.2d 961, 964 (10th Cir. 1933) and citations therein (under Colorado law, the one who holds the legal title is the real party in interest)]; or that it has a full and complete assignment of the note, valid at the time its claim arose and at the time the case was filed [Alpine Associates, Inc. v. KP & R., Inc., 802 P. 2d 1119, 1121 (Colo. App. 1990)]. If the foreclosing party claims to be acting as an agent for the real party in interest, it must also prove the existence of the agency relationship with competent evidence. Hancock v. Minneapolis-Moline, Inc., 482 P.2d 426, 428 (Colo.App. 1971) [citing 3 Am.Jur.2d Agency § 348; burden of proof is on the party who claims to be an agent with authority to file suit to prove the existence of the agency relationship].

## 3. Current Statutory Requirements for "No-Doc" Foreclosure

8. "Full-doc" foreclosures have become rare in Colorado in recent years, due to the prevalence of securitized mortgages, and various recent amendments to the foreclosure statutes that allow "no-doc" foreclosures of those mortgages.

9. Specifically, the "certification" provisions of §§38-38-101(1)(b)(II) and (c)(II) allow a foreclosure to be initiated with a certification or a statement of the attorney for a party who ". . . claims to be a qualified holder . . ." (id.) (emphasis added), and also allow (as an

alternative to an " . . . original endorsement or assignment . . . to the holder of the evidence of debt . . .") " . . . other proper indorsement or assignment in accordance with subsection (6) . . .". 38-38- 101(1)(b) (emphasis added).

10. Subsection (6), in turn, allows two alternatives for establishing a proper indorsement or assignment. The first, in subsection (a), is an essential part of a "full-doc" foreclosure under current law (C. R. S. §38-38-101 (1)); the second, in subsection (b) allows a "no-doc" foreclosure, by allowing a mere "certification" or "statement" to serve as complete and determinative substitute for any evidence whatsoever of any indorsement or assignment whatsoever. Specifically:

> (6) Indorsement or assignment. (a) Proper indorsement or assignment of an evidence of debt shall include the original indorsement or assignment or a certified copy of an indorsement or assignment recorded in the county where the property being foreclosed is located.

> (b) Notwithstanding the provisions of paragraph (a) of this subsection (6), the original evidence of debt or a copy thereof <u>without</u> proper indorsement or assignment shall be <u>deemed to be properly indorsed or assigned</u> if a qualified holder presents the original evidence of debt **or a copy thereof** to the officer *together with a statement in the certification* of the qualified holder or <u>in the statement of the attorney for the qualified holder</u> pursuant to subparagraph (II) of paragraph (b) of subsection (1) of this section <u>that the party on whose behalf the foreclosure was commenced is the holder of the evidence of debt</u>.

> C. R. S. §38-38-101(6) (emphasis added).

11. This provision allows a mere "statement" by an attorney for one who "claims to be" a qualified holder to serve as a complete and determinative substitute for any evidence whatsoever of any endorsement or assignment whatsoever, and allows an Order Authorizing Sale to be entered based solely on the certification or statement.

12. That part of §38-38-101(6) that presently deems an improperly endorsed or assigned evidence of debt to be properly endorsed or assigned, based on a mere certification or statement that the foreclosing party is the holder of the evidence of debt, renders all other statutory definitions of "holder of an evidence of debt" meaningless. Specifically:

> (10) "Holder of an evidence of debt" means the person in actual possession of or otherwise entitled to enforce an evidence of debt; . . For the purposes of articles 37 to 40 of this title, the following persons are **presumed to be** the holder of an evidence of debt:

> (a) The person who is the obligee of and who is in possession of an original evidence of debt;

> (b) The person in possession of an original evidence of debt together with the proper indorsement or assignment thereof to such person <u>in accordance with section 38-38-101 (6)</u>;

(c) The person in possession of a negotiable instrument evidencing a debt, which has been duly negotiated to such person or to bearer or indorsed in blank; or

(d) The person in possession of an evidence of debt with authority, which may be granted by the original evidence of debt or deed of trust, to enforce the evidence of debt as agent, nominee, or trustee or in a similar capacity for the obligee of the evidence of debt.

C. R. S. §38-38-100.3(10) (emphasis added)

13. The problem with the "deemed to be" provision of §38-38-101(6) – cross-referenced in §38-38-100.3(10)(b) – is that it allows a mere certification or statement that a foreclosing party ". . . is the "holder of the evidence of debt". . . ." (§38-38-101(6)) (emphasis added) to constitute conclusive proof of same. This statute, both on its face and as applied routinely in Rule 120 proceedings, renders the entire definition, and sub-definitions, of "holder of an evidence of debt" in §38-38-100.3(10) unnecessary and meaningless, and effectively eliminates the requirement of evidence to support the foreclosure.

### 4. "No-Doc" Foreclosure Is the Only Proceeding under Colorado Law that Requires No Disclosures Whatsoever

14. Current Colorado Law violates due process in foreclosure proceedings, by NOT requiring full disclosures of documentation that supports a foreclosure at the outset of the proceeding. By allowing a mere "statement" by an attorney for one who "claims to be" a qualified holder to serve as a complete and determinative substitute for any evidence whatsoever of any endorsement or assignment whatsoever, and therefore permitting an Order Authorizing Sale to be entered based solely on the attorney certification or statement is in direct conflict with Federal Case law such as the So-called "landmark case: *Trinsey v. Pagliaro D.C.Pa.* 1964, 229 F. Supp. 647 which held:

"Statements of counsel in brief or in argument are not facts before the court and are therefore insufficient for a motion to dismiss or for summary judgment."

and

"An attorney for the plaintiff cannot admit evidence into the court. He is either an attorney or a witness."

The practice of an attorney filing an affidavit on behalf of his client asserting the status of that client is not approved, inasmuch as not only does the affidavit become hearsay, but it places the attorney in a position of witness thus compromising his role as advocate. *Porter v. Porter*, (N.D. 1979 ) 274 N.W.2d 235

15. In all other Federal civil proceedings, Rule 26 requires mandatory disclosures of evidence by all parties.

16. In criminal proceedings, the People must provide "discovery" of the facts on which criminal charges are based.

17. But in a "no-doc" foreclosure under the "certification" provisions of 38-38-101, disclosures are not only optional, but a "certification" alone is statutorily "deemed" to be proof of valid assignments of the right to expeditiously take someone's home, even when the limited documents that have been filed refute the claim of valid assignments. And a homeowner has to litigate for 2-3 years, against the best lawyers money can buy, just to get documentary evidence that should have been disclosed the moment the case was filed. This is logically, morally, legally, and constitutionally unacceptable.

> It is the creditor's responsibility to keep a borrower and the Court informed as to who owns the note and mortgage and is servicing the loan, not the borrower's or the Court's responsibility to ferret out the truth. . . *In Re Nosek*, 2009 U. S. Dist LEXIS 44835, at **9-11 (D. Mass. 2009).

///

///

///



**ASC**
AMERICA'S SERVICING COMPANY

Return Mail Operations
PO Box. 10388
Des Moines, IA 50306-0388
(800) 662-5014

June 13, 2006

RE:   New Loan Number: 1100191411
      Old Loan Number: 1006321606

Mary M. Mayotte          003558
160 E. 84 St. 5C
New York NY  10028-0056

Dear Valued Customer:

This letter is being sent to inform you that the servicing of your loan has transferred to America's Servicing Company effective June 1, 2006. The transfer of mortgage servicing is a common practice in today's market and does not affect any terms or conditions of your mortgage, other than those provisions related to the servicing of your mortgage. Please refer to the Notice of Assignment for the Real Estate Settlement Procedures Act (RESPA) printed on the reverse side of this letter for more information. America's Servicing Company is committed to providing the quality service you are accustomed to and to ensuring a smooth transition.

Beginning June 1, 2006, please direct payments to America's Servicing Company. America's Servicing Company will send you a billing statement each month after your payment is received. If you wish to make a payment greater than the amount due, please indicate how you wish to have the additional funds applied.

All payments and correspondence regarding your loan should be addressed as indicated below:

PAYMENT:                          CORRESPONDENCE:
America's Servicing Company        America's Servicing Company
PO Box 37297                       P.O. Box 10328
Baltimore MD 21297-3297            Des Moines, IA 50306-0328

Please include your old loan number, or America's Servicing Company loan number on all inquiries to assure prompt response to your needs during this period. When you send in a check to make your payment, America's Servicing Company may clear the check electronically. Receipt of your check at the address listed on your payment coupon will authorize us to process your payment as an electronic debit to the checking account on which the check was written. If your mortgage check does not clear and is returned, we may withdraw funds from your account electronically. Normally, if this occurs your check will not be returned to you with your bank statement but you can obtain a copy by other means.

This may be a good time to consider the convenience of our Automatic Mortgage Payment (AMP) program and begin deducting your mortgage payment from your checking or savings account. If interested please read the terms and conditions included in this letter and select the enrollment option that best fits your needs.

If you currently have credit life or other optional insurance, it will not transfer to America's Servicing Company.

No later than January 31st of next year, America's Servicing Company will provide you with a statement reflecting the amount of mortgage interest paid by you to America's Servicing Company.

The goal of America's Servicing Company is to continue to meet your expectations of service. If you have any questions regarding this transfer please call America's Servicing Company Customer Service at 800-662-5014, Monday through Friday 8:00 a.m. to 6:00 p.m. If you have any questions relating to your loan activity prior to the transfer of servicing, please call your previous servicer below:

Previous Servicer: New Century Mortgage Corporation
Toll Free Phone Number: 1-800-561-4567
Hours of Operation: 6:30 a.m. to 6:00 p.m. PST, Monday-Friday

Sincerely,

*Leesa Whitt-Potter*

Leesa Whitt-Potter
Vice President
Customer Operations

WF/6222/PP

## NOTICE OF ASSIGNMENT, SALE OR TRANSFER
## OF SERVICING RIGHTS

Except in limited circumstances, section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C Section 2605) requires that your present servicer send you notice of the assignment, sale, or transfer of the servicing rights to your mortgage loan (i.e., the right to collect payments from you) at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after the effective date or at closing.

You should also be aware of the following information, which is set out in more detail in Section 6 of RESPA (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request.

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such a period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

## SERVICEMEMBERS' CIVIL RELIEF ACT

The (SCRA) Servicemembers Civil Relief Act may offer protection or relief to members of the military who have been called to active duty. If you are a member of the military that's been called to active duty you may contact the Special Loans Department for more details at 1-866-936-SCRA (1-866-936-7272) or Fax your Active Duty Orders to 803-396-6085, attention Servicemembers' Civil Relief Act (SCRA).

### Fee Schedule

| | |
|---|---|
| Amortization Schedule | $15.00 |
| Copy of Loan Documents (each) | $10.00 |
| Duplicate Annual Statement | $ 5.00 |

Fees for assumptions, partial releases, and other services will be quoted upon request. Allowable fees for checks and drafts that are not honored by your bank vary by state and will be assessed automatically. States with fixed rates are as follows: KS-$10; HI & PA-$20; CO, NC & OK-$25; IA, MN & SD-$30. Fees are subject to change without notice.