IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-3092-RBJ-CBS

MARY M. MAYOTTE, an individual,

        Plaintiff,

v

US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET INVESTMENT LOAN TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-4; AMERICA'S SERVICING COMPANY; WELLS FARGO BANK N.A.; ALL PERSONS OR ENTITIES CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THIS COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD UPON PLAINTIFF'S TITLE THERETO; and DEBRA JOHNSON, PUBLIC TRUSTEE OF DENVER COUNTY,

        Defendants.

---

### RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS

---

Magistrate Judge Shaffer

This matter comes before the court on Defendants' "Motion to Dismiss Second Amended Complaint" ("Motion"). (Doc. 37). This Motion was referred to the Magistrate Judge pursuant to the Order of Reference dated March 31, 2015. (Doc. 38). The court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law. For the following reasons, the court recommends that the Motion be granted and the case be dismissed.

## BACKGROUND

Mary M. Mayotte ("Plaintiff"), who is proceeding in this matter *pro se*, brings this action pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605; the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*.; 42 U.S.C. § 1983; the Fifth and Fourteenth

Amendments; and state tort law. In sum, she challenges the foreclosure of the property located at 23 South Garfield Street, Denver, Colorado 80209 ("the Property").

In February 2006, Plaintiff obtained a loan from New Century Mortgage Corporation ("New Century") in the amount of $481,650.00, secured by the Property. (Doc. 31 at 10; *see also* Doc. 31-1[1]). According to the Second Amended Complaint ("Complaint") and the relevant documents, Plaintiff executed an adjustable rate note, in the amount of the loan, payable to New Century. (Doc. 31-1 at 4). The note was transferable and payable to "anyone who takes [the] Note by transfer and who is entitled to receive payments under [the] Note." *Id*. Plaintiff also executed a deed of trust whereby the Property was offered as security for the repayment of the loan, as evidenced by the note. *Id*. at 5-18.

In December 2011, Wells Fargo Bank, N.A. ("Wells Fargo"), acting as attorney in fact for New Century, recorded an assignment of New Century's interest in the deed of trust to U.S. Bank National Association, As Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-4 ("U.S. Bank"). *Id.* at 3. Wells Fargo, through its dba America's Servicing Company, services the loan on behalf of U.S. Bank.[2] (Doc. 31 at 11).

---

[1] When deciding a motion to dismiss, a court must usually disregard facts supported by documents outside of the pleadings unless the court first converts the motion to dismiss into a motion for summary judgment. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). The court, however, may consider documents outside of the complaint in three instances. First, the court may consider outside documents — such as affidavits — when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *See Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987). Second, the court may consider documents subject to judicial notice, such as court documents or matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006). Third, the court may consider documents that are central to the plaintiff's claims and to which the plaintiff refers in the complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130F.3d 1381, 1384 (10th Cir. 1997).

[2] For simplicity — and because the court's analysis does not require that they be distinguished — the court will collectively refer to Well Fargo Bank, N.A. and its dba America's Servicing Company as "Wells Fargo."

Plaintiff ultimately failed to make several loan payments and U.S. Bank initiated foreclosure proceedings.[3] In November 2014, the Denver County District Court conducted a Rule 120 hearing and issued an Order Authorizing Sale. (*See* Doc. 10-1[4]). Thereafter, the Public Trustee sold the Property and issued a Confirmation Deed to U.S. Bank. (Doc. 31 at 55).

## STANDARD OF REVIEW

**A.     Fed. R. Civ. P. 12(b)(1)**

Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). Pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction. The determination of a court's jurisdiction over subject matter is a question of law. *Madsen v. United States ex rel. U.S. Army, Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

A motion to dismiss for a lack of subject matter jurisdiction may take two forms. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). It may facially attack a complaint's allegations or it may challenge the facts upon which subject matter jurisdiction depends. *Id.* at 1002-1003.

---

[3] Plaintiff's pleading are replete with extraneous, non-chronological allegations, and legal arguments, making it difficult to discern the precise course of events in this case. However, it appears from the allegations that Plaintiff attempted unsuccessfully to modify her loan on several occasions, and also filed for bankruptcy. (Doc. 31 at 10-14). And it appears that foreclosure proceedings were initiated on two occasions prior to the proceedings at issue here.

[4] This document it is a court document, part of the public record, and is referenced in the Second Amended Complaint.

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id*. at 1003 (internal citations omitted); *see also Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))

**B.     Fed. R. Civ. P. 12(b)(6)**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, this court may consider exhibits attached to the Complaint without converting the motion into one for summary judgment pursuant to Rule 56. *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. A claim is plausible

when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id*. Facts that are "merely consistent" with a defendant's liability are insufficient. *Id*. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Because Plaintiff is not an attorney, her pleadings and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by a lawyer. *See Hall*, 935 F.2d at 1110 (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (19972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, [her] confusion of legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements." *Id*. However, this court cannot act as a *pro se* litigant's advocate. *Id*. It is the responsibility of the *pro se* plaintiff to provide a simple and concise statement of her claims and the specific conduct that gives rise to each asserted claim. *See Willis v. MCI Telecomms.*, 3 F. Supp. 2d 673, 675 (E.D.N.C. 1998). This court may not "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Nor may a plaintiff defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting violations that have not been plead. *Associated General*

*Contractors of California Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* plaintiffs must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## ANALYSIS

In the Motion, Defendants contend that the *Rooker-Feldman* doctrine limits this court's subject matter jurisdiction as to all of Plaintiff's claims. (Doc. 37 at 16-17). Defendants further contend, that even if this court has jurisdiction, Plaintiff has failed to state any claims upon which relief could be granted. *Id*. at 5-16.

**A.     *Rooker-Feldman* Doctrine**

The *Rooker-Feldman* doctrine[5] prohibits federal courts from exercising "appellate" jurisdiction over final judgments by a state court. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006). To wit, it "precludes a losing party in state court who complains of injury caused by the state court judgment from bringing a case seeking review and rejection of that judgment in federal court." *Dillard v. Bank of New York*, 476 F. App'x 690, 691 (10th Cir. 2012) (quoting *Miller v. Deutsche Bank Nat'l Trust Co.*, 666 F.3d 1255, 1261 (10th Cir. 2012)) (internal quotation marks omitted).

Plaintiff contends that *Rooker-Feldman* is inapplicable to this case because she initiated her action prior to the conclusion of the Rule 120 proceedings. (Doc. 31 at 5). Indeed, the Tenth Circuit has made it clear that *Rooker-Feldman* does not "preclude federal consideration of requests to enjoin a pending foreclosure sale under C.R.C.P. 120." *McDonald v. J.P. Morgan Chase Bank*, N.A., No. 12-cv-02749-MSK, 2014 WL 334813, at *3 (D. Colo. 2014) (citing *Miller*, 666 F.3d at 1261-62). However, in *Dillard*, the Tenth Circuit clarified its determination

---

[5] The doctrine is so named for two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

in *Miller*. Although the Circuit noted that "no final judgment is entered in Rule 120 proceedings for the purposes of the *Rooker-Feldman* doctrine," it nonetheless applied the doctrine to the *Dillard* plaintiff. *Dillard*, 476 F. App'x at 692 n.3. The court explained that the *Dillard* plaintiff — unlike the Millers — was "not seeking to enjoin the sale of her home; rather, she [was] attempting to completely undo the foreclosure and eviction proceedings, which were both final before she ever initiated [her lawsuit]." *Id.*

In this case, the Denver County District Court issued an "Order Authorizing Sale" on November 12, 2014. (*See* Doc. 10-1). Plaintiff initiated this action on November 17, 2014. (Doc. 1). In her initial Complaint Plaintiff did request injunctive relief — although the nature of the injunction she was seeking is unclear.[6] *See Id.* And she moved for a temporary restraining order ("TRO") to prevent the sale of the property. (Doc. 7). However, on December 4, 2014, before the court could rule on the motion, the Public Trustee sold the property to U.S. Bank.[7] On December 18, 2014, following the expiration of the statutory redemption period, the Public Trustee issued a confirmation deed to U.S. Bank, pursuant to C.R.S. § 38-38-502, vesting title to the property in U.S. Bank as of that date.[8]

In the operative Complaint (Second Amended Complaint) Plaintiff, like the plaintiff in *Dillard*, does not seek an injunction preventing the sale of the property; rather, she seeks an order

---

[6] In her original Complaint, Plaintiff — citing to *Ex parte Young* — only referred to enjoining a possible "FED" (forcible entry and detainer) action and did not request an injunction preventing the sale of the property. (Doc. 1 at 46-47, 49-50). Even if the court liberally construes the original Complaint to include such a request, Plaintiff has since filed her Second Amended Complaint, which does not request an injunction of the sale but, rather, seeks to undo the completed foreclosure. *See Franklin v. Kan. Dept. of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005) ("An amended complaint supersedes the original complaint and renders the original complaint of no legal effect.").

[7] Plaintiff's motion for a TRO was denied as moot at the January 16, 2015 status conference. (Doc. 21).

[8] This information is available in the public record and is referenced in the Second Amended Complaint. (*See* Doc. 31 at 55 ("The issuance by the Public Trustee of the Certificate of Purchase and Confirmation Deed . . .")).

7

voiding the Public Trustee's sale to U.S. Bank. (*See* Doc. 31 at 65 (requesting an order that "the Order Authorizing Sale is VOID" and "the Trustee Sale of the Property be vacated")). Consequently, she is attempting to "unwind" the now final foreclosure proceeding. If the court were to grant such a request for relief, "it would engage in the conduct explicitly prohibited by the *Rooker-Feldman* doctrine, *i.e.*, review and rejection of a state court decision in federal court." *Lewis v. Wells Fargo Bank NA*, No. 11-cv-03387-CMA-KLM, 2012 WL 4097709, at *6 (D. Colo. 2012) (applying the *Rooker-Feldman* doctrine where the foreclosure sale took place one day after the plaintiff initiated his lawsuit); *see also McDonald*, 2014 WL 334813, at *4 (concluding that it was appropriate to invoke the *Rooker-Feldman* doctrine where the state court proceedings became final during the pendency of the federal case). Therefore, the court concludes that — despite the fact that this lawsuit was initiated prior to the foreclosure sale of the property — the *Rooker-Feldman* doctrine precludes this court's subject matter jurisdiction over review of the Rule 120 proceedings. *See Lewis*, 2012 WL 4097709, at * 7 (because the foreclosure proceedings were concluded and the plaintiff only sought to undue those proceedings, *Rooker-Feldman* was applicable).

With respect to the specific claims in Plaintiff's Complaint, the court concludes that it is without jurisdiction to provide the declaratory relief (claim one) sought by Plaintiff. She seeks a reexamination of her rights in the foreclosed property in the form of a declaration that none of the defendants has any rights or interest in the Property. *See* Doc. 31 at 30-31. To do so, however, would necessarily require this court to substitute its judgment for that of the state court, which it may not do. Therefore, the court recommends that Plaintiff's request for declaratory relief be dismissed without prejudice as precluded by the *Rooker-Feldman* doctrine. *Lambeth v.*

8

*Miller*, 363 F. App'x 565, 569 (10th Cir. 2010) (dismissal on the basis of *Rooker-Feldman* is without prejudice).

Similarly, the court concludes that all but one of Plaintiff's remaining claims are barred by the *Rooker-Feldman* doctrine, and recommends that they too be dismissed without prejudice. As the court reads these claims, a fundamental assumption underlies all of them: that U.S. Bank lacked the authority to commence and pursue the foreclosure. Plaintiff's "wrongful foreclosure"[9] claim (claim two) asserts that U.S. Bank did not have a valid interest in the property due to, among other things, an invalid assignment of the deed of trust, a breach of contract on the part of U.S. Bank, and "securitization defects" in the note. Plaintiff's quasi-contract and unjust enrichment claim (claim three) argues — somewhat incongruously — that (1) U.S. Bank and Wells Fargo accepted mortgage payments despite having no legal authority to do so; and (2) U.S. Bank and Wells Fargo agreed to modify the terms of Plaintiff's loan and, therefore, should have been prevented from foreclosing on the property. Under any of these foregoing theories, however, Plaintiff ultimately seeks to have this court undermine the foreclosure proceedings.

The due process claims (claims six and seven) allege that Plaintiff's due process rights under the Fifth and Fourteenth Amendments were violated in the process of the foreclosure. But any review of these claims would necessarily involve a reexamination of the, now final, state court proceedings. *Rooker-Feldman* precludes such a review. *See Dillard*, 476 F. App'x at 691-92 (holding that the district court correctly dismissed the plaintiff's due process claim in a foreclosure proceeding for lack of jurisdiction under the *Rooker-Feldman* doctrine). "To the extent that Plaintiff is claiming that the state court erred by permitting [U.S. Bank] to proceed with the foreclosure process, 'the more appropriate remedy is to pursue an independent action in

---

[9] To the extent that Plaintiff seeks damages out of this claim, the court notes that Colorado does not recognize a claim for damages based on "wrongful foreclosure." *See Commercial Equity Corp. v. Majestic Sav. & Loan Ass'n*, 620 P.2d 56, 58 (Colo. App. 1980).

the state court that challenges the. . . order authorizing foreclosure and the sale of the property.'" *Lewis*, 2012 WL 4097709, at * 8 (quoting *Yokomizo v. Deutsche Bank Securities, Inc.*, No. 11-cv-01630-CMA-KLM, 2011 WL 2912691, at *2 (D. Colo. July 20, 2011)).

Plaintiff's claim under the Fair Debt Collection Practices Act ("FDCPA") (claim five) would appear, at first blush, to be appropriate for the court's review. Indeed, FDCPA claims often depend on the *manner* by which a property is foreclosed and, thus, do not require an "appellate-type" review of the state court proceedings. Upon closer review of Plaintiff's claim, however, the court concludes that it is also barred by *Rooker-Feldman*. In her claim, Plaintiff asserts that Wells Fargo "failed to provide debt validation, the current right to possession of the Property, or verify the current creditor" in violation of the FDCPA. (Doc. 31 at 45). Underlying these assertions, however, is the presumption that U.S. Bank did not have any interest in the property or the right to enforce Plaintiff's debt obligation. (*See* Doc. 31 at 44-45 (arguing that Wells Fargo knew that U.S. Bank had no legal interest in Plaintiff's note)). Thus, Plaintiff actually seeks a determination from this court that would invalidate the foreclosure proceedings. The court does not have jurisdiction to conduct this form of review.

Because relief on any of these foregoing claims would necessarily require this court to find that U.S. Bank had no interest in the note and was not entitled to commence and pursue the foreclosure proceedings, the claims are barred by the *Rooker-Feldman* doctrine and the court recommends that they be dismissed without prejudice.

**B.     Failure to State a RESPA Claim**

In claim four, Plaintiff alleges that Wells Fargo — as loan servicer for U.S. Bank — violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, when it failed to respond to her "qualified written request." This claim does not implicate the state foreclosure

proceeding and, therefore, the court's review is not barred by the *Rooker-Feldman* doctrine. Nevertheless, the court recommends that this claim be dismissed.

Under RESPA, a loan servicer must adhere to certain prescribed responsibilities, which include responding to a borrower's qualified written request ("QWR") for information on her mortgage loan. 12 U.S.C. § 2605(e)(1)(A). If a servicer fails to respond adequately within the statutorily designated time, a borrower may sue to recover actual damages. § 2605(f)(1)(A). A borrower may also recover up to $2,000 in statutory damages if she establishes that the servicer engaged in a pattern or practice of noncompliance with the statute. § 2605(f)(1)(B).

To trigger a servicer's duties under the statute, a QWR must "include[], or otherwise enable[] the servicer to identify, the name and account of the borrower" and "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." § 2605(e)(1)(B). Further, a QWR must relate to the servicing of the account. *Tatten v. Bank of America Corp.*, 912 F.Supp. 2d 1032, (D. Colo. 2012) (quoting *Harris v. American General Finance, Inc.*, No. Civ. A. 02-1395-MLB, 2005 WL 1593673, at *3 (D. Kan. July 6, 2005)). Under the statute, "servicing means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Here, Plaintiff included as an exhibit to her Complaint the alleged QWR, dated July 12, 2013. (Doc. 31-1 at 2). However, a fair reading of this document leads the court to conclude that the majority of Plaintiff's inquiry does not relate to the "servicing" of the loan as defined by the statute. Rather, this letter is more properly characterized as a challenge to the validity of the loan.

11

Indeed, this letter seeks copies of the promissory note, the deed of trust, and any assignments of the deed of trust. *See Junod v. Dream House Mortg. Co.*, No. CV 11-7035-ODW, 2012 WL 94355, at **3-4 (C.D. Cal. Jan. 5, 2012) (explaining that copies of promissory notes and deeds of trust and "a complete life of loan transactional history" are " not the type of information RESPA contemplates"). Plaintiff also requests the contact information for the owner of the loan, and she directly denies that U.S. Bank has any interest in the loan. *See Michel v. Deutsche Bank Trust Co.*, No. 1:10-CV-2375 AWI SKO, 2012 WL 4363720, at *10 (E.D. Cal. Sept. 20, 2012) (the identity of the holder of the subject loan does not relate to loan servicing); *see also Henson v. Bank of America*, 935 F. Supp.2d 1128, 1145 (D. Colo. 2013) ("Queries that essentially call for, or dispute, an interpretation of the underlying loan agreement do not constitute a qualified written request.").

Although the letter does request an accounting — which is arguably related to servicing — nowhere in the letter does Plaintiff address any irregularities in Wells Fargo's actual servicing of the loan and the letter does not identify any purported errors with Plaintiff's account or make any inquiries regarding Wells Fargo's servicing thereof. *Marsh v. BAC Home Loans Servicing*, No. 2:09-CV-813-FTM-29DF, 2011 WL 1196415, at *8 (M.D. Fla. March 29, 2011) (finding the notice sent by plaintiff did not qualify as a valid QWR because "[n]othing in the notice indicates that there was a problem with the servicing of the loan (*e.g.*, the way BAC received plaintiffs' scheduled payments due under the loan"); *Hintz v. JPMorgan Chase Bank, N.A.*, No. 10-2825, 2011 WL 579339, at *8 (D. Minn. Feb. 8, 2011) ("the letters were not QWRs because [p]laintiffs did not identify purported errors in their account or ask questions related to Chase's servicing of their loan," and because "[p]laintiffs' letter had no relation to Chase's receipt or application of their payments"). Accordingly, the court concludes that — to the extent Plaintiff's RESPA claim

is predicated on requests that are not directed to the servicing of the loan — those portions of her RESPA claim must be dismissed.

Even assuming that this letter could be construed as a valid QWR — based on Plaintiff's request for an accounting — the claim should, nonetheless, be dismissed because Plaintiff has failed to plausibly demonstrate that her damages were proximately caused by Wells Fargo's alleged failure[10] to respond. "To recover actual damages pursuant to § 2605(f)(1)(A), [Plaintiff] must adequately plead a causal link between [her] claimed damages and the specific RESPA violation committed by" Wells Fargo. *Henson*, 935 F. Supp.2d at 1145. Here, however, Plaintiff's bare recitation of alleged damages fails to make any such link. For instance, Plaintiff does not explain how Wells Fargo's failure to respond resulted in the "over calculation and overpayment of interest on [her] loan." Further, she has not alleged any causal link between the reduction in her credit limits and Wells Fargo's alleged failure to adequately respond to her QWR. Accordingly, the court finds that Plaintiff has failed to state a claim for actual damages under RESPA.

In order to state a claim for statutory damages, a plaintiff must establish that a defendant engaged in a pattern of noncompliance with RESPA. 12 U.S.C. § 2605(f)(1)(B). But here, Plaintiff has alleged only a single instance of Wells Fargo's failure to comply with RESPA. "However, almost as a matter of definition, a single [alleged] failure to respond to a Qualified Written Request does not state a claim for a 'pattern or practice' of doing so." *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp.2d 895, 909 (C.D. Cal. Oct. 14, 2009); *see also Bulmer v.*

---

[10] Plaintiff admits that Wells Fargo did respond to her letter, but alleges that they did not provide the requested information. (Doc. 31 at 17-18). However, the court notes that Plaintiff attached a copy of Wells Fargo's response to her original pleading. (*See* Doc. 1-1 at 8-10). In it, Well Fargo states that they sent Plaintiff a Customer Account Activity Statement, which included a payment history for the account as well as running balances for unpaid principal, escrow, unapplied, and outstanding fees. *Id.* at 10. However, the court need not consider this document in reaching its conclusions because Plaintiff's allegations are otherwise deficient.

*MidFirst Bank, FSA*, 59 F.Supp.3d. 271, 279 (D. Mass. 2014) (one failure to comply with RESPA does not establish a pattern or practice of noncompliance).

## CONCLUSION

For these reasons, the court RECOMMENDS that Defendants' Motion to Dismiss Second Amended Complaint (Doc. 37) be GRANTED. In accordance with foregoing, the court FURTHER RECOMMENDS that claims one, two, three, five, six, and seven be DISMISSED WITHOUT PREJUDICE, for lack of subject matter jurisdiction, and that claim four be DISMISSED WITH PREJUDICE, for failure to state a claim.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. Once Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the district court of the magistrate judge's proposed findings and recommendations and will result in waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation de novo despite the lack of an objection

does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve the issue for *de novo* review by the district court or appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 9th day of November, 2015.

                                    BY THE COURT:

                                    s/Craig B. Shaffer_____
                                    United States Magistrate Judge