IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-3092-RBJ-CBS

MARY M. MAYOTTE, an individual,

    Plaintiff,

v.

US BANK NATIONAL ASSOCIATION, as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-4,
WELLS FARGO BANK. N.A.,
AMERICA'S SERVICING COMPANY, and All Persons or Entities Claiming any Legal or Equitable Right, Title, Estate, Lien or Interest in the Property Described in this Complaint Adverse to Plaintiff's Title, or any Cloud upon Plaintiff's Title Thereto, and
DEBRA JOHNSON, Public Trustee,

    Defendants.

---

## ORDER

---

This matter is before the Court on defendants' "Motion to Dismiss Second Amended Complaint" [ECF No. 37] and the recommendation of Magistrate Judge Craig B. Shaffer that the Court grant the defendants' motion and dismiss the case [ECF No. 52]. The recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

The recommendation advised the parties that specific written objections were due within fourteen (14) days after being served with a copy of the recommendation. ECF No. 52 at 14–15. In response to plaintiff's request, this Court extended the objections deadline to December 11, 2015. ECF No. 54. Plaintiff filed timely objections. ECF No. 55. Defendants filed a response

to those objections on December 30, 2015. ECF No. 56. The Court has reviewed all of the relevant pleadings and Magistrate Judge Shaffer's Recommendation. After its de novo review, the Court adopts the Recommendation.

## BACKGROUND

Plaintiff Mary M. Mayotte brings this matter pro se to challenge the foreclosure of the property at 23 South Garfield Street, Denver, CO 80209 ("the Property"). ECF No. 31 at 8. She alleges a number of violations, including of the Real Estate Settlement Procedures Act; the Fair Debt Collection Practices Act; 42 U.S.C. § 1983; the Fifth and Fourteenth Amendments of the United States Constitution; and state tort law. ECF No. 31 at 2–4. Defendants are U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-4 ("U.S. Bank"); Wells Fargo Bank, N.A., doing business as America's Servicing Company ("Wells Fargo"); and Debra Johnson as Public Trustee of Denver County. ECF No. 31.

Mayotte purchased the Property in 1999. ECF No. 31 at 10. In February 2006 she acquired a $481,650 loan from New Century Mortgage Corporation ("New Century") to refinance the Property. ECF No. 31 at 10; 31-1[1]. Mayotte agreed to an adjustable rate note for

---

[1] Magistrate Judge Shaffer is correct to note that, in general, the Court is limited to the consideration of allegations and facts contained in the complaint. In order to consider documents outside of the complaint, the Court must typically convert a motion to dismiss into a motion for summary judgment. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). However, under certain circumstances, the Court can examine documents beyond the complaint without converting the motion. The Court can consider outside documents when deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *See Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987). Additionally, The Court can consider documents beyond the complaint if they are subject to judicial notice. This includes court documents or other public matters. *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006). Finally, the Court can look at documents that are both central to the claims in the complaint and to which the plaintiff refers in the complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

2

the amount of the loan, which was payable to New Century. ECF No. 31-1 at 4. The note stipulates that the lender can transfer the note. *Id.* Mayotte and New Century signed a deed of trust with Mayotte listed as the borrower and New Century listed as the lender. *Id.* at 8–21. Mayotte pledged the Property as collateral for the loan. *Id.* In December 2011 New Century assigned the deed of trust to U.S. Bank. *Id.* at 3. Wells Fargo services the loan for U.S. Bank. ECF No. 31 at 11.

The pleadings do not clearly identify the timeline of events, but it seems that beginning in July 2008, Mayotte missed three loan payments. *Id.* at 11. It appears that Mayotte unsuccessfully attempted to modify her loan. *Id.* at 14–16. Additionally, she alleges that three foreclosure proceedings were initiated before U.S. Bank commenced the foreclosure proceedings at issue in 2013. *Id.* Following a Rule 120[2] hearing, the Denver County District Court issued an order authorizing sale (OAS) of the Property on November 12, 2014[3]. ECF Nos. 31 at 14; 10-1.[4] Less than one week later, on November 17, 2014, Mayotte brought this suit against defendants.

---

[2] A Rule 120 hearing is a proceeding held pursuant to Colorado Rule of Civil Procedure 120, which delineates the process that a creditor must follow to receive a judicial order permitting the public trustee to sell real estate. *Niederquell v. Bank of America, N.A.*, 2012 WL 1578060, at *2 (D. Colo. 2012). The Rule 120 hearing is a central component of Colorado's non-judicial foreclosure process, and it "is designed to address, in summary fashion, issues related specifically to the existence of a default." *Plymouth Capital Co. v. District Court of Elbert County*, 955 P.2d 1014, 1015–16 (Colo. 1998) (en banc). The creditor files a Rule 120 motion asking the state court for an OAS of the debtor's property. If a debtor properly responds, a hearing is set where the court decides whether the creditor has a legal right to initiate the foreclosure process and whether the borrower is entitled to any relief from the foreclosure. *Id.* at 1016. The Rule 120 hearing provides the debtor with an opportunity to contest the issue of whether a default exists under the note and deed of trust.

[3] Mayotte claims to have made a few payments after she first missed a payment in July 2008 while trying to modify her loan. *See* ECF No. 31 at 14–15. Additionally, a bankruptcy proceeding discharged some portion of her debt. *Id.* at 13–14. Nevertheless, as far as the Court can discern, there has been no eviction, and Mayotte has been living in—or at least retaining possession of—the Property despite having made only a few mortgage payments over the better part of six years.

[4] The Court is permitted to consider this exhibit as it is part of the public record. Additionally, Mayotte relies on it in her second amended complaint.

ECF No. 1. The Public Trustee subsequently sold the Property on December 4, 2014. ECF No. 31 at 14.

On December 8, 2014 Mayotte amended her initial complaint. ECF No. 12. On two occasions defendants filed motions to dismiss in response to Mayotte's initial complaint and the first amended complaint. ECF Nos. 9, 19. This Court found those motions to be moot in light of Mayotte's amending her claims. ECF Nos. 20, 39. On February 27, 2015 Mayotte filed her second amended complaint. ECF No. 31. Mayotte's second amended complaint governs here because "an amended complaint supersedes the original complaint and renders the original complaint of no legal effect." *Franklin v. Kan. Dept. of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005). Defendants filed the present motion to dismiss on March 30, 2015. ECF No. 37.

## ANALYSIS

### I. Standard of Review.

Following the issuance of a magistrate judge's recommendation on a dispositive matter, the district court judge must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). When a case involves a pro se party, courts will "review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Government*, 472 F.3d 1242, 1243 (10th Cir. 2007). However, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A broad reading of a pro se plaintiff's pleadings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based . . . conclusory allegations without supporting factual averments are insufficient to state a claim on

which relief can be based." *Id.* Pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotations and citations omitted).

## II. Defendants' Motion to Dismiss.

Defendants argue that the *Rooker–Feldman* doctrine precludes the Court from exercising subject matter jurisdiction over all of Mayotte's claims. ECF No. 37 at 16–17. Alternatively, even if the Court does have subject matter jurisdiction, defendants claim that Mayotte has failed to state a claim upon which relief could be granted. *Id.* at 5–16. I will address each of defendants' arguments in turn.

### A. Subject Matter Jurisdiction.

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction. Rule 12(b)(1) motions may come in two forms: either "a facial attack on the complaint's allegations as to subject matter jurisdiction [that] questions the sufficiency of the complaint" or "a factual attack" on the facts upon which subject matter jurisdiction depends. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id*. at 1003 (internal citations omitted). Where resolution of the jurisdictional question "is intertwined with the merits of the case," the court must convert the Rule 12(b)(1) motion into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion. *Id.;* Fed. R. Civ. P. 12(d). "The

burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (internal citation omitted).

### 1. *Rooker–Feldman* Doctrine Generally.

Arising out of two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the *Rooker–Feldman* doctrine prevents federal district courts from "exercising appellate jurisdiction" over claims "actually decided" by a state court. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006). The doctrine is very narrow. In *Exxon Mobil Corporation v. Saudi Basic Industries Corporation*, Justice Ginsburg underscored its limited scope, noting that lower courts have improperly expanded *Rooker–Feldman* beyond the Supreme Court's intent. 544 U.S. 280, 283 (2005). Justice Ginsburg clarified that *Rooker–Feldman* is reserved for "(1) cases brought by state-court losers (2) complaining of injuries caused by state-court judgments (3) rendered before the district court proceedings commenced and (4) inviting district court review and rejection of those judgments." *Id*. at 284 (numbers added). The Supreme Court returned to the *Rooker–Feldman* doctrine in *Lance v. Dennis*, 546 U.S. 459 (2006). In *Lance*, the Court stated that since it decided *Feldman,* it has never found the *Rooker–Feldman* doctrine to bar a district court's consideration of an action, and that its decisions "have tended to emphasize the narrowness" of the doctrine.[5] *Lance*, 546 U.S. at 464.

"Appropriate application of the *Rooker–Feldman* doctrine to a Colorado Rule 120 foreclosure proceeding is dependent on a few variables, including when the federal case was

---

[5] Dissenting on other grounds, Justice Stevens praised Justice Ginsburg's treatment of the *Rooker-Feldman* in *Exxon,* writing that "the Court interred the so-called *Rooker-Feldman* doctrine." *Lance*, 546 U.S. at 468.

initiated and what relief is sought by the plaintiff." *Lewis v. Wells Fargo Bank NA*, 2012 WL 4097709, at *5–7 (D. Colo. 2012). Regarding the type of relief, Magistrate Judge Shaffer correctly notes that the general rule in the Tenth Circuit is that *Rooker–Feldman* does not "preclude federal consideration of requests to enjoin a pending foreclosure sale under [Rule 120]." *McDonald v. J.P. Morgan Chase Bank*, N.A., 2014 WL 334813, at *3 (D. Colo. 2014) (citing *In Re Miller*, 666 F.3d 1255, 1261–62 (10th Cir. 2012)). In *Miller*, the Tenth Circuit explained that "no final judgment is entered in Rule 120 proceedings and the rulings of the [state] court in such proceedings do not have preclusive effect." 666 F.3d 1255 at 1261–62 (holding in part that *Rooker–Feldman* should not have precluded the bankruptcy appellate panel from considering whether the bank had standing to seek relief from the automatic stay). The *Miller* panel emphasized the "inherently limited scope" of the *Rooker–Feldman* doctrine. *Id.* at 1261. It found "those cases denying preclusive effect and *Rooker–Feldman* treatment more persuasive than those granting preclusive effect or applying *Rooker–Feldman*." *Id.* at 1261 n.6.

However, in an unpublished decision, *Dillard v. Bank of New York*, 476 F. App'x 690 (10th Cir. 2012), the Tenth Circuit further clarified the bounds of *Rooker–Feldman* regarding Rule 120 proceedings. It found that the *Rooker–Feldman* doctrine *could* apply to a federal claim when the plaintiff is seeking to overturn the final outcome of a Rule 120 hearing. *Dillard*, 476 F. App'x at 692 n.3. The *Dillard* panel distinguished such a situation from that in which a plaintiff moves the court for injunctive relief. *Id.* The panel[6] cited *Miller* and explained that while *Rooker–Feldman* typically does not apply to Rule 120 proceedings because they are not final, Ms. Dillard was "not seeking to enjoin the sale of her home; rather, she [was] attempting to

---

[6] The Court notes that two of the three members of the *Miller* panel also sat on the *Dillard* panel.

7

*completely undo* the foreclosure and eviction proceedings, which were both final before she ever initiated [her] suit. Under these circumstances, *Rooker–Feldman* bars her claims." *Id.* (emphasis added).

Mayotte relies on *Miller* when arguing that *Rooker–Feldman* is inapplicable to her federal claim because the state court's OAS "is not a final order subject to appeal." ECF No. 31 at 5. However, like the *Dillard* plaintiff, Mayotte does not seek injunctive relief to prevent the Public Trustee's sale of the Property in the Second Amended Complaint.[7] Rather, the thrust of her argument is to seek an order voiding the state court's authorization of the sale of the Property and vacating the Public Trustee's sale to U.S. Bank. *Id.* at 65. She is effectively asking the Court to unwind the results of the Rule 120 proceedings. *See Lewis*, 2012 WL 4097709, at *7 (finding that *Rooker–Feldman* applied because the plaintiff aimed to undo the finalized foreclosure proceedings). Magistrate Judge Shaffer notes the persuasive nature of *Dillard* when applied to the present facts.[8] Furthermore, Mayotte's request for relief lands squarely within the category described by Justice Ginsburg in *Exxon*: she is "inviting district court review and rejection" of a state court judgment.

---

[7] As the sale was complete before Mayotte's filing of the second amended complaint, she does not seek an injunction of the sale. Rather, Mayotte cites to *Ex Parte Young* and requests an injunction of a possible "forcible entry and detainer" (FED) action. ECF No. 31 at 54. Even in her original complaint, filed before the sale took place, Mayotte's request for injunctive relief was limited to the possibility of an FED action. ECF No. 1 at 46–47, 49–50. However, on December 1, 2014 Mayotte did file a separate motion requesting a temporary restraining order (TRO) to stop the sale. ECF No. 7. Before the court could consider the request for a TRO, the Public Trustee sold the Property to U.S. Bank. Magistrate Judge Shaffer denied the request for TRO as moot on January 16, 2015 during a status conference. ECF No. 21.

[8] As far as the Court can discern, no eviction proceeding has been initiated. Therefore, unlike the plaintiff in *Dillard,* Mayotte is only challenging the foreclosure proceedings.

The more difficult inquiry here is whether the foreclosure proceedings were sufficiently final when Mayotte filed her federal claim. Colorado's real estate foreclosure process in Colorado involves multiple steps. The court in *Beeler Properties, LLC v. Lowe Enterprises Residential Investors, LLC* noted that "foreclosure of [real property] liens is a hybrid process governed by statute. The process involves issuance of orders by the state district court authorizing and confirming the sale [of the property]. However, the process of conducting the sale and parties' rights in such process are largely administrative." 2007 WL 1346591 at *2 (D. Colo. 2007) (citing C.R.C.P. 120; C.R S. § 38–38–105). The *Beeler* court further described the process as follows:

> Upon default, if the deed of trust so authorizes, the lender or holder of the note may direct the public trustee to sell the property at a foreclosure sale. C.R.S. § 38–38–101(1). The lender must also seek an order from the state district court authorizing the sale under Rule 120. Once a sale is authorized, the public trustee advertises and conducts the sale. C.R.S. § 38–38–101(4). The property is sold to the highest bidder who receives a Certificate of Purchase.

*Id.* Before the sale, the owner may "cure the default" by paying any missed payments to the lender. *Id.* The owner has no right to redeem the title to the property after the sale occurs—post-sale rights of redemption are reserved for junior lien holders.[9] *See* C.R.S. § 38–38–302. Therefore, as there is no redemption period for the borrower, the title to the property automatically vests in the "holder of the certificate of purchase" after "the close of the [Public Trustee's] business day eight business days after the sale." § 38–38–501. Thereafter, the holder

---

[9] Under Colorado law, junior lienholders are entitled to a redemption period during which the junior lienholder "may redeem the title to the property by paying, to the holder of the Certificate of Purchase, the sum for which the property was sold with interest from the date of sale, together with any taxes paid or other proper charges." *Beeler*, 2007 WL 1346591 at *2 (citing C.R.S. § 38–38–101 to § 38–38–103). If redemption occurs, it voids the sale. The owner used to enjoy the same opportunity, but the Colorado General Assembly amended the law to remove that privilege and to instead grant owners a longer period of time to cure. *See* HB 06-1387 (as amended by HB 07-1157).

of the certificate of purchase can seek an order from the state court confirming the sale and can then obtain a Public Trustee's deed. *Beeler*, 2007 WL 1346591 at *2.

My colleagues in this district have analyzed the question of finality when considering cases with various timelines. For example, in *Castro v. Kondaur Capital Corporation*, Magistrate Judge Mix clarified that "[i]f the foreclosure sale has occurred and the previous purchaser's, owner's, or borrower's rights have been extinguished, then *Rooker–Feldman* prevents the federal court from determining the purchaser's, owner's, or borrower's rights in the sold property." 2012 WL 3778346, at *5 (D. Colo. 2012) (unpublished) (citing *Dillard*, 2012 WL 1094833, at *1 n.3). However "[i]f the foreclosure has not yet occurred when the federal action is initiated, the *Rooker–Feldman* doctrine may not be applied to issues raised in connection with a Colorado Rule 120 foreclosure determination." *Id.* (citing *Miller*, 666 F.3d at 1262 n.6).

The *Castro* plaintiffs filed their federal claim after (1) the state court had issued the OAS; (2) the Public Trustee had sold the property and transferred the title to the bank with the winning bid; and (3) eight business days following the sale had elapsed, thereby causing the title to vest in the bank. *Id.* at **2, 5. Magistrate Judge Mix concluded that the plaintiffs' rights were extinguished when the eight-day period ended and the title vested. *Id.* at *5. Therefore, Magistrate Judge Mix found that the "application of the *Rooker–Feldman* doctrine prevents the Court from determining [the plaintiffs'] rights in the sold property." *Id.* The Tenth Circuit agreed "completely" with Magistrate Judge Mix's analysis. *Castro v. Kondaur Capital Corp.*, 541 F. App'x 833, 837 (10th Cir. 2013) (unpublished).

The present timeline, however, does not mirror that in *Castro*. Mayotte argues that *Rooker–Feldman* does not preclude the Court's consideration of her claim because she initiated the federal proceeding "prior to the conclusion of the Rule 120 case." ECF No. 31 at 5. Mayotte filed this lawsuit on November 17, 2014, a few days after the Denver County District Court authorized the sale of the Property. ECF Nos. 1; 10-1. On December 4, 2014 the Public Trustee sold the Property to U.S. Bank at the foreclosure sale. ECF No. 31 at 14. On December 18, 2014, following the expiration of the eight-day window and the vesting of the title in U.S. Bank, the Public Trustee issued a confirmation deed. ECF No. 52 at 7; *see* C.R.S. § 38–38–501. Therefore, unlike in *Castro*, Mayotte initiated her federal suit before her rights in the Property were fully extinguished.

Chief Judge Krieger considered a similar timeline in *McDonald v. J.P. Morgan Chase Bank, N.A.*, 2014 WL 334813 (D. Colo. 2014). Chief Judge Krieger emphasized the general rule that *Rooker–Feldman* does not prevent a district court's consideration of a prayer for injunctive relief from a foreclosure sale, but she noted that the Tenth Circuit "has repeatedly held that the doctrine is applicable to prevent federal attacks on a *completed* foreclosure—*i.e.* one in which the state court has confirmed the Public Trustee's sale (or, at least one in which the redemption periods of C.R.S. § 38–38–501 have expired)." *Id.* at*3 (emphasis in original) (citing *Castro*, 2012 WL 3778346, at *5 and *Dillard*, 476 Fed.Appx. at 691–92). In *McDonald*, the plaintiff filed his first complaint for injunctive relief after the state court had issued the OAS, but one day before the foreclosure sale. *Id*. The court denied his request, and the Public Trustee sold the property and issued a confirmation deed. *Id.* The plaintiff then filed his amended complaint a little over a month before the state court confirmed the Public Trustee's sale of the property. *Id.*

11

Chief Judge Krieger reasoned that, "[o]n these facts, the [c]ourt cannot initially agree with the Defendants that the *Rooker–Feldman* doctrine applies." *Id.*  However, Chief Judge Krieger proceeded to rely on the Tenth Circuit's discussion of *Colorado River* abstention in *DA. Osguthorpe Family Partnership v. ASC Utah, Incorporated*, 705 F.3d 1223, 1232–33 (10th Cir. 2013), for the notion that, under certain circumstances, it is appropriate for a federal court to abstain from considering (or to even dismiss) a federal claim before the conclusion of a parallel state court case.  *Id.*  Adopting that rationale, Chief Judge Krieger reasoned that had the court "stayed or dismissed [plaintiff's] federal suit on *Colorado River* grounds until the state foreclosure proceeding was complete, the practical effect of doing so would place the [c]ourt in an appropriate circumstance to now correctly invoke the *Rooker–Feldman* doctrine." *Id.* at *4. Magistrate Judge Shaffer cites Chief Judge Krieger's reasoning in *McDonald* for the concept that the invocation of *Rooker–Feldman* can be appropriate when the state foreclosure proceedings become final during the pendency of the federal claim.  *See also Lewis*, 2012 WL 4097709, at *7 (*Rooker–Feldman* precluded the district court's consideration of the debtor's federal claim where the debtor brought the federal suit one day before the foreclosure sale and the debtor asked the district court to unwind the results of the foreclosure proceedings).

As Magistrate Judge Shaffer aptly recognizes, Mayotte's Second Amended Complaint is the operative complaint.  By the time Mayotte filed the Second Amended Complaint on February 27, 2015, the eight-day period following the sale had elapsed, the title had vested in U.S. Bank, the confirmation deed had issued, and Mayotte's rights had been extinguished.  It is unclear from the record whether the state court had confirmed the sale between when the confirmation deed was issued and when Mayotte filed her Second Amended Complaint.  Additionally, as noted

above, it seems that no eviction has ever occurred. However, both Magistrate Judge Mix in *Castro* and Chief Judge Krieger in *McDonald* acknowledge that a foreclosure can be considered complete when a mortgagor's rights in the property pursuant to C.R.S. § 38–38–501 have been extinguished. Accordingly, I find that the foreclosure was sufficiently final for the purposes of *Rooker-Feldman* when Mayotte filed the operative complaint. As Mayotte invites the Court to review and reject a final state court proceeding, *Rooker–Feldman* precludes the Court's consideration of any of Mayotte's individual claims that seek to invalidate the foreclosure.

### 2. Mayotte's Individual Claims.

The Court agrees with Magistrate Judge Shaffer's analysis that *Rooker–Feldman* precludes this Court's consideration of all but one of Mayotte's claims. With the exception of the Real Estate Settlement Procedures Act (RESPA) issue, all of Mayotte's claims effectively ask the Court to reexamine the state court's Rule 120 proceedings. I agree with Magistrate Judge Shaffer that granting relief for any of these claims would entail finding that U.S. Bank did not have a legal interest in the note and therefore did not have the right to foreclose on the Property. *Rooker–Feldman* bars this Court from conducting this type of review, and I adopt Magistrate Judge Shaffer's analysis that these claims should be dismissed without prejudice. *See Lambeth v.Miller*, 363 F. App'x 565, 569 (10th Cir. 2010) (when *Rooker–Feldman* precludes consideration of a claim, dismissal is without prejudice).

<u>Claim One – Declaratory Relief.</u>

Plaintiff petitions the Court for a declaration that defendants lack any right to or interest in the Property. ECF No. 31 at 30–31. Mayotte is basically asking me to reexamine the findings

of the state court judge in the Rule 120 proceedings, and her request for declaratory relief would require me to substitute my judgment for that of the state court.

### Claim Two – Wrongful Foreclosure.

Mayotte next claims that the foreclosure was "wrongful" because U.S. Bank lacked a valid interest in the property. *Id.* at 32. In support of her argument, Mayotte alleges that the assignment of the deed of trust was invalid, U.S. Bank breached the "implied contract between itself and Mayotte," and the note contained "securitization defects." *Id.* at 34–36. Furthermore, she attests that defendants breached their "fiduciary duty" to "properly account for payments made by Mayotte and to whom the payments were made and how they were credited to her account." *Id.* at 36. Additionally, Mayotte claims that the foreclosure was wrongful because U.S. Bank does not have the original note and defendants engaged in "dual tracking." *Id*. at 38–39. Consideration of this claim would require me to reconsider and potentially reject the state court's findings.

### Claim Three – Quasi-Contract and Unjust Enrichment.

In Mayotte's third claim, she asserts that defendants did not have legal authority to receive mortgage payments, and that defendants should not have been able to foreclose on the Property because they agreed to modify the terms of Mayotte's loan. *Id.* at 40–41. Like the previous claims, Mayotte's request for relief would require this Court to review and potentially unwind the Rule 120 proceedings.

### Claim Five – Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*.

The preclusive effect of *Rooker–Feldman* on Mayotte's Fair Debt Collection Practices Act (FDCPA) claim is a closer call than with the previous claims. As Magistrate Judge Shaffer

14

notes, FDCPA claims typically do not require a district court to reexamine the foreclosure proceedings because they focus on the manner by which a foreclosure occurs.  However, in this claim, Mayotte focuses principally on the outcome of the foreclosure proceedings by revisiting the notion that U.S. Bank did not have an interest in the Property.  Specifically, Mayotte states that defendants violated the FDCPA because they did not "provide verified debt validation," and they did not have the "current right to possession of the Property[.]" *Id.* at 45.  Additionally, Mayotte claims that defendants failed to "verify the current creditor." *Id.*  She further argues that defendants "threatened in written communications" to "take action to effect dispossession of the subject property" despite their knowledge that U.S. Bank had no legal interest in Mayotte's note. *Id.* at 44–45.  Given Mayotte's focus on U.S. Bank's authority to pursue foreclosure and the eventual outcome of the Rule 120 proceedings, I agree with Magistrate Judge Shaffer's assessment that Mayotte is asking this Court to determine that the foreclosure proceedings were invalid.  I cannot engage in this type of review.[10]

### Claims Six and Seven – Due Process.

Mayotte requests relief pursuant to 42 U.S.C. § 1983 for the violation of her due process rights under the Fifth and Fourteenth Amendments of the Constitution. *Id.* at 46–54.  She argues that defendants "interfered with Mayotte's due process and equal protection of the law in the Rule 120 hearing." *Id.* at 4.  As Magistrate Judge Shaffer determines, my consideration of these claims would require me to reexamine the state court proceedings, and I am precluded from

---

[10] Even if I had subject matter jurisdiction over Mayotte's FDCPA claim, it is unclear if this claim could proceed on the merits under Rule 12(b)(6). It is unsettled in the Tenth Circuit whether the initiation of a Rule 120 procedure by the proper holder of a note and deed of trust qualifies as a debt collection activity covered by the FDCPA. *Cf. Maynard v. Cannon*, 401 F. App'x 389, 394–95 (10th Cir. 2010).

doing so.[11] *See Dillard*, 476 F. App'x at 691–92 (holding that the district court correctly dismissed the plaintiff's due process claim in a foreclosure proceeding for lack of jurisdiction under the *Rooker–Feldman* doctrine). With this type of claim, the more appropriate course of action for Mayotte is to "pursue an independent action in the state court that challenges the . . . order authorizing foreclosure and the sale of the property." *Lewis*, 2012 WL 4097709, at *8 (internal quotations and citation omitted).

### B. Failure to State a Claim – Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617.

The only remaining claim is Mayotte's fourth claim where she alleges that Wells Fargo, while servicing the loan for U.S. Bank, violated RESPA because it failed to respond to her "qualified written request" (QWR). ECF No. 31 at 17–18. To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g., Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

---

[11] If *Rooker-Feldman* did not preclude my review of Mayotte's due process claims, they would fail on the merits because Mayotte's allegations that these defendants are state actors are insufficient. ECF No. 31 at 6. *See Lewis*, 2014 WL 1217948, at **2–5.

If a borrower is concerned about an error in his mortgage account, he can submit a "qualified written request" (QWR) to the loan servicer. § 2605(e)(1)(B). As Magistrate Judge Shaffer notes, a QWR must relate to the servicing[12] of the account. *Tatten v. Bank of America Corp.*, 912 F.Supp.2d 1032, 1043 (D. Colo. 2012) (internal quotations and citation omitted). A loan servicer can be liable for a failure to respond to a QWR in a timely and adequate manner. § 2605(e)-(f). If the servicer fails to comply, the borrower can be entitled to actual damages caused by the failure and additional damages if there is a "pattern or practice of noncompliance with the requirements" of RESPA. *Henson*, 935 F.Supp.2d at 1144 (citing § 2605(f)(1))(internal citations omitted). Mayotte admits that Wells Fargo did respond but "did not provide, and has not provided to date, the information required" under RESPA. ECF No. 31 at 18. Therefore, Mayotte is not alleging a failure to respond but rather that Wells Fargo violated RESPA because its July 31, 2013 response to her letter was inadequate. *Id.* at 17–18.

Magistrate Judge Shaffer recommended the dismissal of Mayotte's RESPA claim because much of her July 12, 2013 letter does not relate to the servicing of the loan, and, more critically, she fails to allege how Wells Fargo's allegedly inadequate response injured her. In her objection, Mayotte briefly notes her disagreement with Magistrate Judge Shaffer's analysis that the portions of her letter that do not relate to the servicing of the loan should be dismissed. ECF No. 55 at 22. However, she does not make any mention of Magistrate Judge Shaffer's finding that she fails to adequately allege that Wells Fargo caused her injury. Under Fed. R. Civ. P. 72(b)(2), a party may file "specific written objections," and the Court must conduct a de novo

---

[12] Loan servicing includes the collection of payments from a borrower as determined by the terms of the loan. § 2605(i)(3).

review of any part of the Magistrate Judge's recommendation to which a party has properly objected. If a party does not properly object to a section of the Magistrate Judge's conclusion, "the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir.1991) (citing *Thomas v. Arn,* 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").

The Court has conducted a de novo review as to whether any portion of Mayotte's letter addresses the servicing of the loan and therefore qualifies as a QWR. The majority of her letter relates to the validity of the loan itself and not to the servicing of it. Even if this Court were to find that the letter is a QWR because it requests an accounting, Mayotte's RESPA claim still fails on the issue of damages. As mentioned above, Mayotte makes no objection to Magistrate Judge Shaffer's conclusion that she fails to allege a causal connection between her claimed damages and the alleged violation of RESPA. I have reviewed the relevant pleadings on this issue, and based on my review, I conclude that "there is no clear error on the face of the record." Fed. R. Civ. P. 72 advisory committee's note. The Court adopts Magistrate Judge Shaffer's recommendation that Mayotte's RESPA claim be dismissed under Rule 12(b)(6).

### III.     Mayotte's Claims Against Debra Johnson, Public Trustee.

Mayotte named Debra Johnson, Public Trustee for the City and County of Denver, a defendant in all of her complaints. Through her lawyer, Johnson answered the Second Amended Complaint. ECF No. 36. In her answer, Johnson asserts that she simply carried out her duty under Colorado law to "administer the foreclosure process." *Id.* at ¶ 4. Additionally,

she states that if the Court directs her to do something, she will comply, but that otherwise, she takes no position in the case. *Id.* at 3–4. In the operative complaint, Mayotte clarifies that she is solely seeking injunctive relief against Johnson. ECF No. 31 at 59. But there is nothing to enjoin as Johnson has no further role in this case. The sale is complete and the confirmation deed has been issued, thereby completing the Public Trustee's duties in the foreclosure process. Given this Court's adoption of Magistrate Judge Shaffer's recommendation that U.S. Bank's motion to dismiss be granted, there is no viable claim remaining against the Public Trustee. I dismiss the claims against Debra Johnson *sua sponte* and without prejudice.

## ORDER

For the reasons discussed above, the Court ADOPTS Magistrate Judge Shaffer's recommendation [ECF No. 52]. Defendants' motion to dismiss [ECF No. 37] is GRANTED. Claims One, Two, Three, Five, Six, and Seven are dismissed without prejudice, and Claim Four is dismissed with prejudice. Plaintiff's claims against defendant Debra Johnson are dismissed without prejudice. As the prevailing parties defendants may file a bill of costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 14th day of March, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

20