Mary M. Mayotte

23 South Garfield St.
Denver, CO 80209
Phone Number: 303-321-8935

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2016 APR -8 PM 3:03

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

MARY M. MAYOTTE, an individual;

Plaintiff,

vs.

US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET INVESTMENT LOAN TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-4; WELLS FARGO BANK N.A.; AMERICA'S SERVICING COMPANY; and ALL PERSONS OR ENTITIES CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THIS COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD UPON PLAINTIFF'S TITLE THERETO; DEBRA JOHNSON, PUBLIC TRUSTEE OF DENVER COUNTY

Defendants

Court Case Number: 14-CV-3092-RBJ-CBS

MOTION TO ALTER AND AMEND (59 e) AND MOTION TO VACATE A COLORADO RULE 120 ORDER AUTHORIZING SALE AS VOID AB INITIO under Rule 60 (b) (4) AS EXPLAINED IN *LINDSEY VS NORMET*, 405 U.S. 56, 67 (1972) AS CONTROLLING

## CERTIFICATE OF CONFERRAL COLO. D.C. 17 a

Petitioner Mary Mayotte, in good faith conferred with Respondents regarding Mayotte's Motion to Alter and Amend 59 (e), and Motion to Vacate a Void Order Authorizing Sale in the State court under Rule 60 (b) (4) to Allison Biles at abiles@swlaw.com on behalf of **US BANK** and **Wells Fargo** and Patrick Wheeler at patrick.wheeler@denvergov.org on behalf of the **Denver County Trustee**.

Those that are opposed are __Biles__, unopposed_____, no response __Wheeler__.

COMES NOW Plaintiff, Mary Mayotte, and her objection to Judge R. Brooke Jackson's Order to adopt Magistrate Judge Shaffer's Recommendation for this Civil Action Case Number: 14-CV-3092-RBJ-CBS and Mayotte's request for Motion to Alter and Amend Rule 59(e) and Rule 60 (b) (4). In this case, Plaintiffs timely filed the above motion by April 8th, 2016 as per the court order.

**FIRST**--A motion for amendment under Rule 59(e) is limited to a narrow set of circumstances: "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) <u>the need to correct clear error or prevent manifest injustice.</u>" *Id.* (Cite) Plaintiff submits this motion because there is a <u>need to correct clear error or prevent manifest injustice</u>.

**SECOND**-- A motion to vacate a void order or judgment may be filed pursuant Federal Rule of Civil Procedure 60(b). Although motions for reconsideration under Rule 59 (e) and Rule 60(b) serve similar functions, each has a particular purpose. *United States v. Fiorelli*, 337 F.3d 282,288 (3d Cir. 2003). For instance, "Rule 60(b) allows a party to seek relief from a final judgment under a limited set of circumstances including fraud, mistake, or <u>the order and judgment is void</u>" FRCP 60 (b) (4)

## LAW AND ARGUMENT
### THE COURT'S MISAPPREHENSION OF THE FACTUAL AND LEGAL CONCLUSIONS IN THE ORDER OF DISMISSAL

Judge Jackson's Order to adopt Magistrate Shaffer's Recommendation to Dismiss relied upon incorrect and mischaracterized events/facts to conclude the following:

A. The Court cited and applied Dillard v. Bank of New York, 476 F. App'x 690 (10th Circuit 2012), where Mayotte did not seek injunctive relief to prevent the Public Trustee's sale of her property in her Second Amended Complaint. This Court concluded that Plaintiff was asking the Court to unwind the results of the Rule 120 proceedings. The Court also cites Exxon in that the Plaintiff is "inviting district court review and rejection" of a state court judgment. (P. 8)

B. The Court cites Castro v. Kondaur Capital Corporation and McDonald v J.P. Morgan Chase Bank, N.A. 2014WL334813 (D. Colo. 2014) that combined, acknowledge that a foreclosure can be considered complete when a mortgagor's rights in the property pursuant to C.R. S. Section 38-38-501 has been extinguished. Judge Jackson states that Plaintiff's property foreclosure was sufficiently final for the purposes of Rooker-Feldman when Plaintiff filed the operative complaint to which "....Rooker-Feldman precludes the Court's consideration of any of Mayotte's individual claims that seek to invalidate the foreclosure." (P.13)

1

## BACKGROUND

1. The Court acknowledges on Page 3 of its Order that there was an assignment (Assignment) of Plaintiff's Deed of Trust (DOT) from New Century to U.S. Bank on 12/13/2011. This is supported by U.S. Bank's admission in its Motion to Dismiss Plaintiff's Second Amended Complaint, Page 3, that the Assignment was a valid document filed with the Denver County Public Trustee's Office on 12/27/2011.

U.S. Bank's admission supports Plaintiff's contention in her original Complaint, Amended Complaint and Second Amended Complaint, pleadings, and Objection to Magistrate Schaffer's Recommendation to Dismiss the Case (Objection), that U.S. Bank was not the holder in due course and did not have legal standing in Plaintiff's DOT/ Promissory Note from inception of Plaintiff's loan through 12/13/2011. U.S. Bank's illegal, fraudulent and wrongful foreclosure actions in 2008 and again in 2011 against Plaintiff tortuously interfered with Plaintiff and New Century's contract and caused irreparable harm and destruction to Plaintiff's personal and business livelihood. At no time did New Century or New Century's Bankruptcy Trustee file foreclosure proceedings against Plaintiff.

2. Page 3 of the Order states:
*"Wells Fargo services the loan for U.S. Bank. ECF No. 31 at 11."*

Wells Fargo/ASC ("Wells Fargo") was the loan servicing agent for New Century from Plaintiff's loan inception through the Assignment date of 12/13/2011. Wells Fargo was New Century's attorney in fact when executing the Assignment to U.S. Bank on behalf of New Century. Wells Fargo serviced Plaintiff's loan for U.S. Bank effective 12/14/2011. Wells Fargo was an active and willing participant in all three illegal, fraudulent and wrongful U.S. Bank foreclosure actions against Plaintiff.

3. Page 3 of the Order states:
*"The pleadings do not clearly identify the timeline of events, but it seems that beginning in July 2008, Mayotte missed three loan payments. Id. at 11."*

Plaintiff disagrees with the Court's statement that she <u>missed</u> three loan payments. Plaintiff was instructed by New Century, via Wells Fargo, to <u>withhold three loan payments in exchange and in consideration for a loan modification package.</u> Upon Plaintiff demonstrating to New Century/Wells Fargo that she withheld three loan payments, New Century/Wells Fargo mailed a loan modification application package to Plaintiff for completion. Plaintiff was approved for a

temporary loan modification agreement in 2009 and as required by New Century procedures, Plaintiff paid the three withheld loan payments to Wells Fargo to activate her new loan modification program. This New Century direction was a contract addendum to Plaintiff's Deed of Trust/Promissory Note in 2009.

**4. Page 3 of the Order states:**
*"It appears that Mayotte unsuccessfully attempted to modify her loan. Id. at 14-16. "*

    This is an incorrect statement. See paragraph 3 above.

**5. Page 3 of the Order states:**
*"Additionally, she alleges that three foreclosure proceedings were initiated before U.S. Bank commenced the foreclosure proceedings at issue in 2013."*

    This is not a correct statement. At issue are three independent U.S. Bank foreclosure actions against Plaintiff. The first action was filed in 2008, the second action in 2011 and the third and final action in 2013. U.S. Bank's response in its Reply in Support of Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint states in Footnote 2, page 4, *that "....Defendants' standing in the 2008 and 2011 foreclosure actions, it is irrelevant."* Plaintiff strongly disagrees. See paragraphs 1 and 2 above. Defendants' two foreclosure actions and related activities from 2008 to 2011 directly caused irreparable harm and damage to Plaintiff's personal and business livelihood thereby preventing Plaintiff from qualifying for a permanent loan modification program. Further, Plaintiff attached an Exhibit 4 to Plaintiff's Objection providing additional support that the signatory on the 12/13/11 DOT Assignment, Ryan Amato, was not an employee of Wells Fargo on 12/13/2011. Plaintiff challenges the validity of the Assignment in its entirety and re-states that U.S. Bank's 2013 foreclosure proceedings against Plaintiff was also an illegal, fraudulent and a wrongful foreclosure notwithstanding U.S. Bank's confirmation to this Court that it filed a valid Assignment.

**6. Page 3 of the Order states:**
*"Less than one week later, on November 17, 2014, Mayotte brought this suit against Plaintiffs."*

    The United States District Court for the District of Colorado website identifies its requirements for the filing of a Temporary Restraining Order (TRO) for injunctive relief which Plaintiff, pro se, complied with. Upon learning of the 11/12/2014 "Order Authorizing Sale" of her property, Plaintiff filed her original Complaint with this Court on 11/17/2014 followed with an emergency TRO injunctive relief request, filed on 11/18/2014. Plaintiff's first TRO asked for ex-parte relief as

the Plaintiff would suffer great and irreparable injury and damage if the Court did not review/stop the sale of Plaintiff's property. This Court did not respond to Plaintiff's first TRO request. Plaintiff filed a second emergency TRO request for injunctive relief on 12/1/2014 due to non-response by this Court to her first TRO filing.

Plaintiff contacted the Clerk of the Court on 12/2/2014 asking status of the second requested TRO hearing. The Clerk responded to Plaintiff, "You need a lawyer". Plaintiff asked why she needed lawyer and the Clerk responded "because of legal reasons". The sale of the Plaintiff's property occurred on 12/4/2014. Because of the Court's non-response to Plaintiff's two emergency TROs, Plaintiff was forced to file an Amended Complaint on 12/8/2014 that now sought injunctive relief to stop a possible FED action (Ninth Cause of Action, Pg. 44) and a request to reverse of the sale of her property.

Plaintiff learned in the first Status Conference hearing on 1/16/2015 with Magistrate Schaffer that the Court did not deliver "consent paperwork" for signatures to Plaintiff and Defendants that would have allowed assignment of Plaintiff's case to a judge or magistrate. Plaintiff did in fact file claims for injunctive relief via her original complaint, two TRO's and her Amended Complaint. Plaintiff contends her foreclosure was not sufficiently final for the purpose of Rooker-Feldman and Judge Jackson's ruling on page 13 of the Order is based on missing facts that caused Plaintiff's case to be assigned after 2/12/15.

**7. Footnote Number 3 on page 3 of the Order states:**
*"Mayotte claims to have made a few payments after she first missed a payment in July 2008 while trying to modify her loan. See ECF No. 31 at 14-15. Additionally, a bankruptcy proceeding discharged some portion of her debt. Id. at 13-14. Nevertheless, as far as the Court can discern, there has been no eviction, and Mayotte has been living in—or at least retaining possession of the Property despite having made only a few mortgage payments over the better part of six years."*

This footnote contains an incorrect statement regarding Plaintiff's payments. See paragraph 4 above. Wells Fargo repeatedly failed to properly account for and apply approximately $100,000.00 of Plaintiff's payments. Payments made by Plaintiff from inception of the loan to 12/13/2011 were to be delivered to New Century and or New Century's Bankruptcy Trustee. Due to Wells Fargo not providing timely and proper accounting, Plaintiff was unable to reconcile her payments to the Notice to Cure balances for the three foreclosure actions. It was communicated to Plaintiff's counsel in 2014 by a Vice President of Wells Fargo that because Plaintiff involved a Senator's office to investigate her case, Plaintiff did not and would not receive proper accounting from Wells Fargo.

4

**8. Page 4 of the Order states:**
*"On two occasions Defendants filed motions to dismiss in response to Mayotte's initial complaint and the first amended complaint. ECF Nos. 9,19. This Court found those motions to be moot in light of Mayotte's amending her claims."*

On 1/2/2015 <u>and without a hearing</u>, Magistrate Schaffer ordered Defendants' two filed motions to dismiss Plaintiff's initial complaint and amended complaint, were moot. The two filed emergency TROs were not addressed in the Magistrate's 1/2/2015 Order.

Plaintiff's second TRO filed on 12/1/2014 was declared moot in the Status Conference Hearing of 1/16/2014. No order was issued regarding the first TRO filing of 11/17/2014. See paragraph 6 above regarding Plaintiff's reasons for filing her Amended Complaint on 12/8/2014.

<u>Plaintiff's Amended Complaint did not include a claim for injunctive relief to stop the sale of the property because Plaintiff's home had been sold on 12/4/2014</u> and the Court had failed to respond to Plaintiff's two TRO emergency requests.

Magistrate Shaffer's 1/2/2015 Order also required Plaintiff to file a response to the Defendant's Motion to Dismiss Plaintiff's Amended Complaint by 1/22/2015. This Order confused Plaintiff as it stated the Defendant's Motion to Dismiss Plaintiff's Amended Complaint (18) was moot. Plaintiff concluded the 1/2/2015 Order effectively "stayed" Plaintiff's Amended Complaint which further delayed her case.

### II. A. 1. Defendants Motion to Dismiss, Rooker-Feldman Doctrine Generally

**9. Page 7 of the Order states:**
*"The Dillard panel distinguished such a situation from that in which a plaintiff moves the court for injunctive relief. Id. The panel cited Miller and explained that while Rooker-Feldman typically does not apply to Rule 120 proceeding because they are not final, Ms. Dillard was "not seeking to enjoin the sale of her home rather she (was) attempting to completely undo the foreclosure and eviction proceedings, which were both final before she ever initiated (her) suit. Under these circumstances, Rooker-Feldman bars her claims." Id. (emphasis added.)*
Further:
*"However, like the Dillard plaintiff, Mayotte does not seek injunctive relief to prevent the Public Trustee's sale of the Property in the Second Amended Complaint. Rather, the thrust of her argument is to seek an order voiding the state court's authorization of the sale of the Property and vacating the Public Trustee's sale to U.S. Bank. Id. At 65."*

See paragraphs 6 and 8 above. This Court had sixteen days (11/18/2014 to 12/4/2014) to process Plaintiff's two emergency TRO requests for a hearing to review/stop the sale of her property. These facts are contrary to Judge Jackson's implication that the Court did not have sufficient time to consider Plaintiff's request for a TRO, Footnote 7, page 8 of his Order.

5

A second conference hearing was held on 2/6/2015. Magistrate Schaffer ordered the Parties to file its Court consent form by 2/12/15 that allowed assignment of Plaintiff's civil case. Magistrate Schaffer also granted Plaintiff leave to file a Second Amended Complaint by 2/27/2015. Plaintiff contends the application of Rooker-Feldman should not bar Plaintiff's claims as Plaintiff did originally seek injunctive relief correctly.

**10. Page 12 of the Order states:**
*"As Magistrate Judge Schaffer aptly recognizes, Mayotte's Second Amended Complaint is the operative complaint. By the time Mayotte file the Second Amended Complaint on February 27, 2015, the eight day period following the sale had elapsed, the title had vested in U.S. Bank, the confirmation deed had issued, and Mayotte's rights had been extinguished."*
Further:
*"However, both Magistrate Judge Mix in Castro and Chief Judge Krieger in McDonald acknowledge that a foreclosure can be considered complete when a mortgagor's rights in the property pursuant to C.R.S. Section 38-38-501 have been extinguished. Accordingly I find that the foreclosure was sufficiently final for the purposes of Rooker-Feldman when Mayotte filed the operative complaint. As Mayotte invites the Court to review and reject a final state court proceed, Rooker-Feldman precludes the Court's consideration of any of Mayotte's individual claims that seek to invalidate the foreclosure."*

There are two primary reasons for why the Second Amended Complaint (the operative Complaint per this Court's determination) was to be filed on or before 2/27/2015. The first reason is Plaintiff's original filed Federal claims in November and December 2014 were not responded to by this Court because there was no assignment of her case. The second reason is Magistrate Schaffer issued a 1/2/2015 order that "stayed" Plaintiff's case. Plaintiff's case was not formally assigned to Judge Jackson until after 2/12/2015 thereby authorizing a Second Amended complaint to be filed with the Court on 2/27/2015. Because Plaintiff's previous injunctive relief requests/claims were declared moot, Plaintiff's Second Amended Complaint included claims to reverse the foreclosure sale and vacate the Public Trustee's order of sale to U.S. Bank that was awarded ownership of Plaintiff's property.

Plaintiff should not be penalized by applying the Dillard case to argue that Plaintiff did not seek injunctive relief in her "operative" Second Amended Complaint. Please see paragraph 6 above. In addition, the application of the Castro and McDonald cases supporting the dismissal of Plaintiff's case because Plaintiff's property rights were extinguished by the time the Second Amended Complaint was filed is outrageously prejudicial to Plaintiff. Again see paragraphs 9 and 10 above. Plaintiff respectfully reasserts that Rooker-Feldman is not applicable to this civil action pursuant to this submittal of the above corrected events/facts.

# MOTION TO VACATE THE COLORADO RULE 120 AS VOID AB INITIO
## (RULE 60 (b) (4))
### FRCP Rule 60 (b) (4) Grounds for Relief from a Judgment, <u>Order</u>, OR <u>Proceeding</u>

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: **(4) the judgment [or order] is void**

## PLAINTIFF MARY MAYOTTE'S 1983 DUE PROCESS CLAIM

In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) the court held that insofar as petitioner's complaint challenged the state statute as being procedurally defective under the Due Process Clause, he did present a valid cause of action under 1983. The statutory scheme obviously is the product of state action, and a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a "state actor" for purposes of the Fourteenth Amendment. Respondents were, therefore, acting under color of state law in participating in the deprivation of petitioner's property. Pp. 939-942.

The court was concerned with the relationship between the requirement of "state action" to establish a violation of the Fourteenth Amendment, and the requirement of action "under color of state law" to establish a right to recover under 42 U.S.C. 1983, which provides a remedy for deprivation of Constitutional rights when that deprivation takes place "under color of any statute, ordinance, regulation, custom, or usage" of a State. Respondents filed suit in Virginia state court on a debt owed by petitioner, and sought prejudgment attachment of certain of petitioner's property.

Pursuant to Virginia law, respondents alleged, in an ex parte petition, a belief that petitioner was disposing of, or might dispose of his property in order to defeat his creditors; acting upon that petition, a Clerk of the state court issued a writ of attachment, which was executed by the County Sheriff; a hearing on the propriety of the attachment was later conducted; and 34 days after the levy the trial judge dismissed the attachment for respondents' failure to establish the alleged statutory grounds for attachment. <u>Petitioner then brought his action in Federal District Court pursuant to a 1983 claim</u> (as did Plaintiff Mayotte), alleging that in attaching his property respondents had acted jointly with the State to deprive him of his property without due process of law. <u>The District Court held that the alleged actions of the respondents did not constitute state action as required by the Fourteenth Amendment, and that the complaint therefore did not state a valid claim under 1983</u>. The Court of Appeals affirmed, but on the basis that the complaint failed to allege conduct under color of

state law for purposes of 1983 because there was neither usurpation or corruption of official power by a private litigant nor a surrender of judicial power to the private litigant in such a way that the independence of the enforcing officer was compromised to a significant degree.

Here, the state statute is the "but for" cause of Plaintiff's injuries which directly affected Plaintiff with the issuance of an Order Authorizing Sale; and whether the <u>power of sale</u> foreclosure involves significant state action as applied under §38-38-101 et seq., and prosecuted in the Rule 120 resulting in an Order Authorizing Sale causing Plaintiff harm.

Plaintiff's injury occurred because of Colorado law, and the lack of adherence to the 14th and 5th Amendments which denied Plaintiff Mayotte the ability to defend. By the Rule 120 statute, Plaintiff could not present defenses. Nor could Plaintiff agree that the state courts would consider evidence. Nor could Plaintiff presume facts to be true in the absence of proof by defendants. This type of direct action by the state to allow non-rebuttable presumptions is exactly what has always been considered state action.

When states pass laws that discriminate on the basis of race, or pass laws that harm protected classes by treating them differently from other classes, the laws were scrutinized for constitutionality because they were actions taken by the state. How can one argue that state laws that interfere with homeowners' rights are less "state action" than laws that interfere with the rights of minorities? If state laws which directly strip individual rights resulting in losing their homes are not state action, what is?

In *Lindsey v. Normet,* 405 U.S. 56, 67 (1972) the court considered whether a wrongful detainer statute was unconstitutional. It held that due process requires an ability to present <u>every available defense</u>. In reaching its conclusion, the majority believed the law constituted state action under due process and equal protection. Clearly, when a state enacts a statute, whether a foreclosure or unlawful detainer statute that limits a litigant's rights, state action is involved. The U.S. Supreme Court (Scotus) cases support this conclusion and a <u>substantial Federal question</u> is presented in this case.

This case is similar to *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S.922 (1982). In determining what constitutes state action, the Court's "goal in every case is to determine whether an action can fairly be attributed to the State." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 306 (2001). Scotus has long recognized that both specific state statutes and actions taken by a state agent (i.e. Public Trustee/Sheriff/legislator) constitute state action. For example, in *Shelley*

*v. Kraemer*, 334 U.S. 1, 16 (1948), the Court held actions can be "repugnant to Constitutional commands whether directed by state statute or taken by a judicial official in the absence of a statute." Similarly, Scotus has held that "while private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by statute clearly is the product of state action subject to Constitutional restraints ...." *Lugar*: 941.

The position that state statutes which directly impact citizens constitute state action has been uncontroversial. Some cases directly challenging a statute that acts upon a group of individuals often skip a state action analysis and simply analyze the Constitutional issue. For example in *Taylor v. Louisiana*, 419 U.S. 522, 535 (1975), the Court, without discussion, held that a law that prohibited women from serving as jurors was unconstitutional.

## UNDER COLOR OF LAW

*"Private persons, jointly engaged with state officials in the prohibited action, are acting "under color of law" for purposes of the statute. To act "under color of law" does not require that the accused be an officer of the State. It is enough that he is a willful participant in a joint activity with the State or its agent." Lugar: 948*

In *Lugar supra*, a state law allowed an attachment of a person's property in an *ex parte* proceeding related to an alleged but unproved debt. A creditor sought such an order, obtained it, and an attachment order was executed by the sheriff. Subsequently, the alleged debtor challenged the order and it was removed. The debtor brought a 1983 action, as did Plaintiff Mayotte alleging that the private party acted with the state to deprive the debtor of his property. Scotus agreed that the state statute was state action and that the court's involvement in allowing the private party to attach the property was also state action. Specifically, the Court held that the debtor "was deprived of his property through state action; [the creditors] were, therefore, *acting under color of state law* in participating in that deprivation." [B] *Lugar*: 942

The same is true for Plaintiff's case. <u>The Rule 120 statute</u> provides the procedure to deprive a person of his property without a fair hearing. U.S. Bank willfully and fraudulently invoked that procedure in the Rule 120.

Scotus makes it clear that a state statute is state action when it directly works to impact the rights of a group of people in a way that causes harm.

Plaintiff argues that allowing a party to take possession of a person's home without proving standing violates due process. A state's decision to tie the homeowners' hands presents equal protection problems. Why is it permissible to remove people from their homes before figuring out

9

lender's standing? The Colorado courts never address the fact that Scotus held that "due process requires there be an opportunity to present every available defense." *Lindsey* at 56, 66 (1972).

## ROOKER FELDMAN DOCTRINE

While this court agreed in sum with plaintiff regarding the *Rooker Feldman* doctrine and its application to the Rule 120 Order Authorizing Sale, it reversed itself stating that the Sale of the property was sufficient to re-apply Rooker Feldman citing Dillard v. Bank of New York, 476 F. App'x 690 (10th Circuit 2012). 11-1379 (D.C. No. 1:09-CV-03008-WYD-BNB)

Dillard does not take into account that the Rule 120 foreclosure is a non-judicial proceeding, and accordingly Rooker Feldman only applies to judicial proceedings. At p. 7 &8 the court, citing Dillard, said:

***"The panel cited Miller and explained that while Rooker-Feldman typically does not apply to Rule 120 proceedings because they are not final, Ms. Dillard was "not seeking to enjoin the sale of her home; rather, she [was] attempting to completely undo the foreclosure and eviction proceedings, which were both final before she initiated [her] suit. Under these circumstances, Rooker-Feldman bars her claims." Id. (emphasis added).***

The State court proceedings end by the issuance of an Order of Sale and not by the sale itself whereupon the aggrieved party may seek injunctive or other relief in a court of competent jurisdiction. Rule 120 (d) Applying Rooker Feldman because the property was sold before plaintiff could seek injunctive relief would be prejudicial and cut off any other right or remedy to pursue for damages not contemplated by Rule 120 (d) which states: "The granting of any such motion shall be without prejudice to the right of any person aggrieved to seek injunctive or other relief in any court of competent jurisdiction, and the denial of any such motion shall be without prejudice to any right or remedy of the moving party.". See also *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172 (2012)

Thus, by its very own terms, an order issued under Rule 120 does not trigger application of the *Rooker-Feldman* doctrine (applicable to state court judgments or orders only and not to the sale of the property), or deny the federal jurisdiction to determine due process claims brought under §1983 which is exempt from the Anti-Injunction statute. *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972)

But Plaintiff Mary Mayotte was not only seeking injunctive relief, but justly seeking damages pursuant "to any right or remedy" as stated in the Rule 120 (d) without any prejudice. Denial of her right to pursue her claims, even if she could not undo the sale would be prejudicial and would reward the defendants the fruit of a fraudulent and facially unconstitutional foreclosure proceeding.

In *ANDERSON, v. PRIVATE CAPITAL GROUP, INC.; ANASAZI GOLD RESERVE, LLC; AGR MINERALS, LLC*, No. 12-4153 (2013) the court held that the *Rooker-Feldman* "applies only to suits filed after state proceedings are *final*." *Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006). The Rule 120 order authorizing sale is not a "*final ord*er". It has no preclusive effect and the Tenth Circuit has concluded that the *Rooker-Feldman* doctrine is inapplicable to a Rule 120 as explained in *In Re Mark Miller vs. Deutsch Bank Trust Company*, No. 11-1232 (2012), and guided by the opinions of the Colorado Court of Appeals:

***"We conclude that neither the Rooker-Feldman doctrine nor issue preclusion applies to prevent a federal court from determining whether Deutsche Bank is a "party in interest" entitled to seek relief from stay.... "***

By the same token, "the *Rooker-Feldman* doctrine nor issue preclusion applies to prevent a federal court from determining whether" the Rule 120 is facially unconstitutional. In *KENMAN ENGINEERING v CITY OF UNION* No. 01-6145 (2002) this court said:

***"Thus, the Supreme Court has identified two categories of cases that fall outside Feldman's "inextricably intertwined" umbrella. [U]nder Feldman, a party may bring a general constitutional challenge to a state law, provided that: the prior state-court judgment did not actually decide that the state law at issue was facially constitutional, see Rooker, 263 U.S. at 415-16. ...."***

In this case the Court in the Rule 120 <u>did not actually decide that the state law at issue was facially constitutional</u>. Nor could the Rule 120 do so by the very tenets of Rule 120. The limited scope of the Rule 120 was outlined in *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172 (2012) when the Tenth Circuit court analyzed the Rule 120 and said:

***<u>"The scope of inquiry at such hearing shall not extend beyond the existence of a default and whether the homeowner was under the Soldiers and Sailor's Relief Act.</u>" 50 U.S.C. §§3901-4043***

The court observed that "<u>Neither the granting nor the denial of a motion under this Rule shall constitute an appealable order or judgment</u>" citing Rule 120 (d). Although the constitutional issue was not raised in *Rosenfield*, the Tenth Circuit described a violation of due process as explained in *Lindsey vs Normet* - 405 U.S. 56 at p.78 when the Court said:

***"This Court has recognized that, if a full and fair trial on the merits is provided, the Due Process Clause of the Fourteenth Amendment does not require a State to provide appellate review."(Cite).***

Per Lindsey, Colorado may deny a full and fair hearing or a right to appeal <u>but not both</u> as homeowner's face in the Rule 120. The Tenth Circuit has never addressed the issue of the

11

constitutionality of the Rule 120 against the backdrop of the Supreme Court decision in *Lindsey*. The profile of the Colorado Rule 120 is exactly what the Supreme Court explained would be a denial of Due Process.

## VIOLATION OF 42 U.S.C. SEC. 1983

*Section 1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws by any person acting 'under color of any statute, ordinance, regulation, custom, or usage of any State or Territory." Gomez v Toledo,— U.S.—100 S. Ct. 1920,m 1922 (1980)*

Indeed, Rule 120 (d) expressly states that "[n]either the granting or the denial of a motion under this Rule shall constitute an appealable order or judgment" and that such a decision is without prejudice to any right or remedy of the moving party...".

*Rooker Feldman*, does not bar a challenge to a rule on which a judicial decision was based if the rule was "promulgated in a non-judicial proceeding which is not *final*." *District of Columbia Court of Appeals v. Feldman* 460 US 492 at 486; see also *Skinner v. Switzer*, 131 S.Ct. 1289, 1297-98 (20011) (*Rooker-Feldman* does not bar a Federal plaintiff's constitutional challenge to a state statute after a state court has construed the statute adversely to the plaintiff). Thus, in *Feldman*, the district court could not hear a bar examination applicant's claim that the District of Columbia Court of Appeals had violated his due process rights by acting arbitrarily and capriciously in rejecting his petition. 460 U.S. at 486-87. The district court could, however, hear his constitutional challenge to the bar admissions rule the Court of Appeals had applied in reaching its decision. *Id.* At 487; see also *Doe v. Flar. Bar.*, 630 F.3d 1336, 1341042 (11th Cir. 2011) (*Rooker-Feldman* bars as-applied Constitutional challenges, but not facial challenges); *Kastner v. Tex. Bd. Of Exam'rs*, 408 F. App'x 777, 779 (5th Cir. 2010)

State court proceedings end by the issuance of an Order of Sale which is not *final,* and not by the sale itself, whereupon the aggrieved party is told that he or she may seek injunctive or other relief in a court of competent jurisdiction. Rule 120 (d)

This court has an obligation to review the law §38-38-101 which governs the procedurally defective Rule 120 under the 14th Amendment and Plaintiff's 1983 claim.

12

# THE ORDER AUTHORIZING SALE IS VOID AB INITIO BECAUSE THE RULE 120 GOVERNED BY §38-38-101 IS FACIALLY UNCONSTITUTIONAL UNDER *LINDSEY VS NORMET* CITED ABOVE (RULE 60 (b) (4))

In *Mathews v. Urban*, 645 P.2d 290 (Colo. App. 1982) the court held that, <u>if the judgment sought to be vacated is void because the court lacked subject matter</u> jurisdiction, <u>any time limit established by C.R.C.P. 60(b) is inapplicable</u>. The court there stated: "This Conclusion is based upon the consideration that a *void judgment* is no judgment at all and, therefore, that the 'reasonable time' requirement of the rule 'means in effect, no time limitation.'

In Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 649 (1972) the court said:

*"[U]nlike other motions made pursuant to the other subsections of Rule 60(b), the court lacks discretion with respect to a motion made under Rule 60(b)(4). Accordingly, our review of motions for relief under C.R.C.P. 60(b) (3) is de novo. See Carter vs Fenner, 136 F.3d 1000, 1005. <u>Relief under C.R.C.P. 60(b) (3) is mandatory because a void judgment "is one which, from its inception, was a complete nullity and without legal effect.</u>" See also Weaver Constr., 190 Colo. at 232, 545 P.2d at 1045 (B, U)*

It has long been established as basic law that the validity of a judgment depends upon the court's jurisdiction of the person and of the subject matter of the particular issue it assumes to decide. Considering what is meant by the term "jurisdiction" it is well settled that this term includes the court's power to enter the judgment, and the entry of a decree which the court has no authority to enter is without jurisdiction and void.

A *void judgment* may be attacked directly or collaterally. *Newman v. Bullock*, 23 Colo. 217, 47 Pac. 379; *Atchison, Topeka and Santa Fe Railway Co. v. Board of County Commissioners*, 95 Colo. 435, 37 P (2d).

In *GLEN GERY CORPORATION v. ZONING HEARING BOARD OF DOVER TOWNSHIP J-130*-2006, the Pennsylvania Supreme Ct. explained the <u>void ab initio doctrine</u> when it said:

*"Prior to addressing the exact language of the statutes and precedent from this Court, it is helpful to understand the genesis and the meaning of the <u>void ab initio</u> doctrine and its roots in due process concerns. Under this theory, a statute held unconstitutional is considered void in its entirety and inoperative as if it had no existence from the time of its enactment. (Citing Marbury v. Madison[, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) ]"*

## THE COURT POWER TO VACATE THE SALE AFTER AUCTION

The operative result of a void Order Authorizing Sale because it is facially unconstitutional under *Lindsey,* is to make the Public Trustee's Deed also void. Accordingly, "... [W]here a deed of trust is void, all proceedings under the deed of trust would likewise be wholly ineffective and void."

13

(*Saterstrom v. Glick Bros. Sash, Door & Mill Co.* (1931) 118 Cal.App. 379, 383.) "'<u>A void deed passes no title and cannot be made the foundation of a good title even under the equitable doctrine of bona fide purchase.</u>" (*Erickson v. Bohne* (1955) 130 Cal.App.2d 553, 556 (*Erickson*) quoting 26 Corpus Juris Secundum, pp. 307-308; see also *Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 44 [<u>**recognizing the "elementary legal principle" that any claim of title flowing from a void trust deed is also void**</u>]. [B, U]

A Rule 60 (b) (4) is appropriate to vacate a void order of sale in the Rule 120, governed by the challenged statute §38-38-101, and which is facially and "as applied unconstitutional".

## LIS PENDENS

The Lis Pendens is a form of protection to the person or entity that files it. It means that even if the property is sold, they do not automatically lose their claim to title. The lawsuit still must be resolved, and the new owner is subject to the results of that suit every bit as much as the person who sold it would have been. The purpose of a Lis Pendens is to provide a "constructive notice" (in other words, a warning) to potential purchasers of a property that its ownership is in dispute: if they chose to purchase it, they are buying it subject to the outcome of that lawsuit. The Lis Pendens is an alert that title to the property is clouded. The purchaser is not acquiring a "fee simple absolute" ownership interest in the property. The Lis Pendens means that any purchaser would be wary of purchasing such a property, where its title is not certain.

**Plaintiff Mary M. Mayotte recorded a Lis Pendens at the Denver County Recorder's Office (Reception # 2014143779) on 11/24/14.**

US Bank as purchaser of the property through a public trustee sale had constructive notice as well as actual notice of the Lis Pendens.

Therefore, the public trustee deed does not pass good title until the court lawsuit is resolved in favor of defendants. If not, this court may reverse the sale accordingly because U.S. Bank is not a "holder in due course" who must have paid value, in good faith, with no knowledge of the defects in the transaction. *Deutsche Bank Trust Company Americas v. Samora*, 2013 COA 81; *See also Clinton GEORG and Freestyle Sports Marketing, Inc., v METRO FIXTURES CONTRACTORS, INC.* No. 07SC26 (March 17th, 2008)

## CONCLUSION

In view of the above corrections of events/facts/arguments, Plaintiff is requesting this Court reconsider its ruling, vacate its Order and allow Plaintiff's case to proceed accordingly, especially when the Rule 120 (d) clearly states that there should be no prejudice "to any person aggrieved to seek injunctive <u>or other relief in any court of competent jurisdiction</u>." As important U.S. Bank's admission that it had no legal standing and was not the holder in due course of Plaintiff's DOT/Promissory Note from loan inception through December 13, 2011, per the filed Assignment, demonstrates the collusive actions between U.S. Bank and Wells Fargo to steal Plaintiff's property. Plaintiff also submitted Exhibit 4 to her Objection which shows Ryan Amato was not an employee of Wells Fargo on 12/14/2011 and someone other than Ryan Amato applied his signature to the Assignment. At a minimum U.S. Bank and Wells Fargo's collusive actions between 2008 and 2011 demonstrate the level of deception perpetrated on Plaintiff. It is all the more reasonable for Plaintiff to argue that the same deceptive practices were applied in the 2013 foreclosure proceedings such as the same exact fraudulent Qualified Holder Statement that was filed with the Denver County Public Trustee for each foreclosure action. Plaintiff maintains all three U.S. Bank foreclosure actions in 2008, 2011 and 2013 were illegal, wrongful and fraudulent. The Colorado Rule 120 statute and its procedures harbored the theft of Plaintiff's property via a non-judicial process and Plaintiff has no other recourse than this Court so that she may recover her property and pursue all claims against the parties the destroyed her personally and financially, including her rights to argue the unconstitutionality of Colorado Rule 120 statute.

Plaintiff requests this Court reinstate Plaintiff's individual claims, all claims for injunctive relief, including claims against the Public Trustee, Debra Johnson, and restore Plaintiff's claims under RESPA.

Plaintiff requests that the court declare the Colorado Rule 120 void ab initio under the ruling in *Lindsey vs Normet* as well as reversing and vacating the sale of plaintiff's property to U.S. Bank.

As the Supreme Court said: "a federal court's 'obligation' to hear and decide" cases within its jurisdiction "is 'virtually unflagging.' " *Sprint Communications, Inc. v. Jacobs*, 571 U. S. ___, ___ (2013 at p. 6)

**Respectfully submitted this 8th day of April, 2016.**

*[signature]*
**MARY M. MAYOTTE, Plaintiff**

15

# CERTIFICATE OF SERVICE BY MAIL

Declaration of **MARY MAYOTTE**:

On April _8_, 2016. I mailed the following documents regarding:

**MOTION TO ALTER AND AMEND (59 e ) AND MOTION TO VACATE A COLORADO RULE 120 ORDER AUTHORIZING SALE AS VOID AB INITIO under Rule 60 (b) (4) AS EXPLAINED IN *LINDSEY VS NORMET*, 405 U.S. 56, 67 (1972) AS CONTROLLING**

I served the documents by enclosing them in an envelope and depositing the sealed envelope with the United States Postal Service with the postage fully prepaid. The envelope was addressed and mailed as follows:

- **Attorney: Allison Biles** for US Bank N.A. as Trustee, US Bank and Wells Fargo
  Address: Snell and Wilmer
  1200 17TH Street
  Denver, CO 80202

- **Attorney: Patrick A. Wheeler,** for Deborah Johnson, Public Trustee
  Address: Patrick A. Wheeler, Reg. No. 14358
  Assistant City Attorney
  201 West Colfax Avenue, Dept. 1207
  Denver, CO 80202-5332

I declare under penalty of perjury under the laws of Colorado that the foregoing is true and correct.

Respectfully submitted this _8_, day of April, 2016

*[signature]*
MARY M. MAYOTTE, Petitioner