FILED
United States Court of Appeals
Tenth Circuit

**PUBLISH**

January 23, 2018

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

Elisabeth A. Shumaker
Clerk of Court

_____

MARY M. MAYOTTE,

    Plaintiff - Appellant,

v.

U.S. BANK NATIONAL ASSOCIATION, As Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-4; WELLS FARGO BANK N.A.; AMERICA'S SERVICING COMPANY, and All Persons or Entities Claiming any Legal or Equitable Right, Title, Estate, Lien or Interest in the Property Described in this Complaint Adverse to Plaintiff's Title, or any Cloud upon Plaintiff's Title Thereto; DEBRA JOHNSON, Public Trustee,

    Defendants - Appellees.

No. 16-1252

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:14-CV-03092-RBJ-CBS)**
_____

John E. Campbell, Campbell Law LLC, St. Louis, Missouri, for Plaintiff-Appellant.

Jessica E. Yates, Snell & Wilmer LLP, Denver, Colorado (Allison L. Gambill, on the briefs) for Defendants-Appellees.
_____

Before **HARTZ**, **HOLMES**, and **BACHARACH**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.

_____

On this appeal the parties have asked us to determine how, or even whether, an important—but subtle and often confusing—doctrine limiting federal-court jurisdiction should apply to a unique Colorado procedure for "nonjudicial" foreclosure of mortgages. The jurisdictional doctrine is the *Rooker-Feldman* doctrine, which forbids lower federal courts from reviewing state-court civil judgments. Colorado's unique procedure is Colorado Rule of Civil Procedure 120, which requires creditors pursuing nonjudicial foreclosure to first obtain a ruling by a Colorado trial court that there is a reasonable probability that a default exists. *See generally* Andrea Bloom, *Foreclosure by Private Trustee: Now Is the Time for Colorado*, 65 Denv. U. L. Rev. 41, 51, 56 (1988) (Bloom). As it turns out, we need not decide whether the *Rooker-Feldman* doctrine bars a federal-court challenge to a Rule 120 proceeding or ruling. We hold only that the federal-court suit before us is not barred by the *Rooker-Feldman* doctrine because none of the claims (at least none pursued on appeal) challenge the Rule 120 proceedings or seek to set aside the Rule 120 ruling. We leave for the district court on remand to consider what effect, if any, the Rule 120 ruling may have on this case under state-law doctrines of claim and issue preclusion.

**I. BACKGROUND**

Plaintiff Mary Mayotte was the debtor on a note held by U.S. Bank, NA. The note was secured by a deed of trust assigning a security interest in her home to the public trustee of Denver County and creating a power of sale in the trustee. Wells Fargo

2

serviced the loan for U.S. Bank. One allegation is that Plaintiff contacted Wells Fargo to modify her loan, that Wells Fargo told her she needed to miss three payments to secure a modification, and that she eventually took this advice. Rather than granting her a modification, however, Wells Fargo placed her in default. She further alleges that the defendants fabricated documents, that their actions rendered her title unmarketable, that they have no ownership interest in her promissory note or property, that they have been unjustly enriched by accepting payments not due them, that they damaged her credit standing, and that they violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 *et seq*. (RESPA) and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*.

In late 2014, proceedings to sell the home to pay the note were commenced in Colorado state court under Rule 120. Before the sale, Plaintiff (proceeding pro se) filed suit in the United States District Court for the District of Colorado. In addition to seeking an injunction against the sale, she asked for damages resulting from the defendants' actions, an accounting for the money she had paid to the defendants, cancellation of the promissory note and deed of trust, and a declaration that the defendants have no interest in her home.

The court took no action before the sale, so (still proceeding pro se) she amended her complaint and later filed a second amended complaint (the Complaint), which is now the operative complaint. The factual allegations of the Complaint were essentially the

same as those in the original complaint, and most of the relief sought was also the same, except that she no longer sought an injunction to prevent the sale.[1]

The district court dismissed Plaintiff's claim under RESPA for failure to state a claim; and, perhaps misled by unpublished decisions of this court, it dismissed the rest of the claims without prejudice under *Rooker-Feldman* on the ground that the claims "effectively ask[ed] the [c]ourt to unwind the results of the Rule 120 proceedings." Aplt. App. at 128. We affirm the district court's dismissal of Plaintiff's claim under RESPA because she offers no argument on the issue. *See Franklin Savings Corp. v. United States*, 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) (failure of appellant's brief to develop argument on an issue waives that issue on appeal). Plaintiff does, however, challenge on appeal the dismissal under *Rooker-Feldman*. We reverse. Because of the complexity of the legal issues, we first discuss Colorado's nonjudicial-foreclosure regime and then the *Rooker-Feldman* doctrine.

## II. COLORADO'S NONJUDICIAL FORECLOSURE REGIME

Nonjudicial foreclosures are available in 33 states and the District of Columbia. *See* Grant S. Nelson et al., *Real Estate Finance Law* § 7:20 n.1 (6th ed. 2014). Nonjudicial foreclosures generally allow a creditor to foreclose on a debtor's property more efficiently and less expensively than do judicial foreclosures. *See id.* § 7:20. Most

---

[1] Plaintiff also claimed that the Rule 120 proceeding is unconstitutional if it is a final judicial decision with preclusion and *Rooker-Feldman* effects. On appeal, however, she makes clear that she is not pursuing any claim based on the Rule 120 proceeding if we overturn the *Rooker-Feldman* bar to her other claims. We therefore do not address these constitutional claims, even though stated in the Complaint.

4

nonjudicial-foreclosure regimes do not require hearings and have minimal notice requirements. *See id.*

Colorado, however, has a unique process—requiring a public trustee and the involvement of a judge. *See id.* § 720 n.2; Bloom at 41, 43. Nonjudicial foreclosure is available only if the deed of trust, which authorizes sale of the property to pay a debt, names the county's public trustee as trustee. *See* Bloom at 45. And the beneficiary of the trust must obtain an order from a court under Colorado Rule 120 before selling the property. *See id.* at 46 & n.54. This requirement of judicial involvement was originally enacted to assist in the determination of the military status of debtors, in compliance with what is now called the Servicemembers Civil Relief Act, 50 U.S.C. § 3953, which protects service members from secured creditors. S*ee generally Goodwin v. Dist. Court*, 779 P.2d 837, 840–42 (Colo. 1989) (summarizing history of the rule and its construction by Colorado Supreme Court); Hal Tudor & Bruce Nelson, *C.R.C.P. Rule 120: Understanding the Revision*, 6 Colo. Law. 40, 41 (1977) (Tudor & Nelson). But in light of *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 342 (1969), which held that constitutional due process required a judicial hearing before prejudgment garnishment of wages, Rule 120 was expanded in 1976. It now requires judicial review of not just the debtor's military status but also of "the existence of the default . . . [and] the existence of other facts or circumstances authorizing, under the terms of the deed of trust described in the motion, the exercise of a power of sale contained therein." Tudor & Nelson at 46. Other issues that might affect the validity of the foreclosure, however, are not to be considered. *See Plymouth Capital Co. v. Dist. Court of Elbery Cty.*, 955 P.2d

5

1014, 1017 (Colo. 1998) ("The Rule 120 hearing is not the proper forum for addressing the various and complex issues that can arise in some foreclosures. . . . [T]he scope and purpose of a Rule 120 hearing is very narrow . . . ."); Bloom at 56 ("Many issues that could vitally affect the rights of the debtor, the owner of the property, and junior lienors and their ability to cure or to redeem, cannot be considered in the Rule 120 court hearing.").

If the court makes the required findings and the sale is conducted in accordance with the order authorizing the sale, "the court shall thereupon enter an order approving the sale." Colo. R. Civ. P. 120(g). Although the applicable Colorado statute provides that after the sale the title to the property vests in the purchaser, subject to rights of redemption, *see* Colo. Rev. Stat. Ann. § 38-38-501(1); *Ragsdale Bros. Roofing v. United Bank*, 744 P.2d 750, 752–54 (Colo. App. 1987) (discussing predecessor to the statute), the Rule 120 decision is not definitive on other matters. The court determines only whether there is "a reasonable probability" of the existence of the alleged circumstances justifying the sale. Colo. R. Civ. P. 120(d); *see* Tudor & Nelson at 46. And the decision is without prejudice to claims in an independent action seeking an injunction to prohibit the sale or other relief. *See* Colo. R. Civ. P. 120(d)[2]; Tudor & Nelson at 44; Bloom at 56

---

[2] Rule 120(d) provides:

> Neither the granting nor the denial of a motion under this Rule shall constitute an appealable order or judgment. The granting of any such motion shall be without prejudice to the right of any person aggrieved to seek injunctive or other relief in any court of competent jurisdiction, and the denial of any such motion shall be without prejudice to any right or remedy of the moving party.

6

(Issues not considered in the Rule 120 court hearing "can appropriately be raised and considered in independent actions for declaratory relief or injunctive relief regardless of the outcome of the motion for an order authorizing the sale." (footnotes omitted)).

The gist of a Rule 120 decision is therefore simply that the sale of the property can proceed unless some other court, which need pay no attention to the findings by the Rule 120 court, decides to halt or otherwise modify the sale. And the rights created by the order approving the sale are limited to clearing title to the property. There do not appear to be any decisions by the Colorado appellate courts permitting challenges to whether a Rule 120 sale vested title in the purchaser. *Cf. Ragsdale*, 744 P.2d at 752–54 (determining that title vested by sale under predecessor to § 38-38-501 was subject to mechanics lien).

### III. THE *ROOKER-FELDMAN* DOCTRINE

"The *Rooker-Feldman* doctrine . . . provides that only the Supreme Court has jurisdiction to hear appeals from final state court judgments." *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006). The genesis of the *Rooker-Feldman* doctrine is the Supreme Court's 1923 decision in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). In that case the plaintiff had lost an earlier suit in Indiana state court but claimed in federal district court that "the [state-court] judgment was rendered and affirmed in contravention of the . . . Constitution of the United States," and that therefore it should be "declared null and void." *Id.* at 414–15. The Supreme Court held that federal district courts "could [not] entertain" such litigation, as only the Supreme Court was vested by Congress with

7

the authority to reverse or modify state-court judgments. *Id.* at 416; *see also District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Over 80 years later, the Supreme Court revisited the *Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp. [SABIC]*, 544 U.S. 280 (2005), in part because of the Court's view that the doctrine had been unduly expanded by the lower courts. *See id.* at 283. Shortly after SABIC had sued ExxonMobil in state court seeking a declaration that certain royalty charges were proper, ExxonMobil sued SABIC in federal court alleging overcharges. In the federal suit SABIC moved for dismissal on the ground of sovereign immunity. The district court denied the motion but SABIC took an interlocutory appeal. While the appeal was pending, the state-court jury rendered its verdict. The federal court of appeals then dismissed the interlocutory appeal for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine, holding that federal jurisdiction terminated upon entry of the judgment in state court. *See id.* at 289–90. The Supreme Court reversed. It cautioned that "*Rooker* and *Feldman* exhibit the limited circumstances in which th[e] Court's appellate jurisdiction over state-court judgments . . . precludes a United States district court from exercising subject-matter jurisdiction." *Id.* at 291. "In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an *injury caused by the state-court judgment* and seeking review and rejection of that judgment." *Id.* (emphasis added). Because the case before it was not of that type, the governing law was not *Rooker-Feldman* but preclusion doctrine. *See id.* at 293 ("Disposition of the federal action, once state-court adjudication is complete, would be governed by preclusion law.").

8

In *Campbell v. City of Spencer*, 682 F.3d 1278, 1280 (10th Cir. 2012), we applied the lessons of *Exxon Mobil* to a challenge to the seizure of allegedly mistreated horses by the Oklahoma County Sheriff's office. After the seizure, two Oklahoma municipalities filed a petition in state court seeking forfeiture of the horses. *See id.* The court granted the petition. *See id.* The person who had owned the horses before the forfeiture order unsuccessfully appealed. *See id.* She then filed a civil-rights suit in federal district court, alleging violations of the Fourth Amendment (the prepetition search of her property and seizure of her horses), Fifth Amendment (the taking of her horses without just compensation through the forfeiture order), and Eighth Amendment (the imposition of an unreasonable bond to prevent forfeiture of her horses). *See id.*

Following the Supreme Court's lead in *Exxon Mobil*, we recognized that "[t]he essential point is that barred claims are those 'complaining of injuries caused by state-court judgments.' In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Id.* at 1283 (quoting *Exxon Mobil*, 544 U.S. at 284). Applying *Exxon Mobil*'s formulation of the *Rooker-Feldman* test to the facts in *Campbell*, we held that the Fifth and Eighth Amendment claims were "a direct attack on the state court's judgment because an element of the claim[s] is that the judgment was wrongful." *Id.* at 1284–85. The Fourth Amendment claims, on the other hand, did not attack the state-court judgment—"[s]he could raise the same claims even if there had been no state-court proceedings," *id.* at 1285, because the complained-of actions occurred before the filing of the petition for forfeiture. Thus, the district court had jurisdiction to consider those claims.

9

These precedents establish that *Rooker-Feldman* does not deprive a federal court of jurisdiction to hear a claim just because it could result in a judgment inconsistent with a state-court judgment. There is no *jurisdictional* bar to litigating the same dispute on the same facts that led to the state judgment. For example, there is jurisdiction to litigate in federal court the parties' claims arising out of an automobile accident even if the same claims had already been litigated in state court. To be sure, the judgments in the two cases could be inconsistent; but that is a problem to be resolved under preclusion doctrine, not *Rooker-Feldman*. A party's claims in the later federal action could be barred by claim preclusion or issue preclusion. But the federal court has *jurisdiction* to determine whether there is such a bar.

What *is* prohibited under *Rooker-Feldman* is a federal action that tries to *modify or set aside* a state-court judgment because the state proceedings should not have led to that judgment. *See Exxon Mobil*, 544 U.S. at 291 (cases governed by *Rooker-Feldman* involved complaints "seeking review and rejection of [a state-court] judgment"). Seeking relief that is *inconsistent* with the state-court judgment is a different matter, which is the province of preclusion doctrine. Thus, there would be a *Rooker-Feldman* issue if the federal suit alleged that a defect in the state proceedings invalidated the state judgment. That was what *Rooker* was about—alleged violations of due process, equal protection, and the Contract Clause by the state court. *See also Feldman,* 460 U.S. at 465–69 (challenging local court's denial of admission to court's bar on ground of violation of Fifth Amendment and antitrust law). But "attempts merely to relitigate an issue determined in a state case are properly analyzed under issue or claim preclusion

10

principles rather than *Rooker-Feldman*." *In re Miller,* 666 F.3d 1255, 1261 (10th Cir. 2012).

## IV. APPLICATION TO THIS CASE

Plaintiff seeks title to her home and compensation for damages caused by the defendants' alleged misconduct. Are these claims barred by *Rooker-Feldman*? We think not.

*Rooker-Feldman* can bar a federal-court claim by Plaintiff only if "an element of the claim is that [a prior state-court] judgment was wrongful." *Campbell*, 682 F.3d at 1284. "[B]arred claims are those 'complaining of injuries caused by state-court judgments.'" *Id.* at 1283 (quoting *Exxon Mobil*, 544 U.S. at 284). But Plaintiff is not making such a claim. Even if we were to assume for the sake of argument that the Rule 120 order authorizing the sale of the property (or the order approving the sale) could be considered a judgment under *Rooker-Feldman* for some purposes,[3] Plaintiff is not

---

[3] Our decision in *In re Miller,* 666 F.3d at 1261–62, considered the application of *Rooker-Feldman* in a federal bankruptcy proceeding. The purported creditor had obtained an order authorizing sale in a Rule 120 proceeding after the state court rejected the debtor's challenge to the creditor's standing to initiate the proceeding. Before the sale could take place, the debtor filed for bankruptcy, staying the state-court proceedings. We held that when the purported creditor moved for relief from the stay, *Rooker-Feldman* did not deprive the bankruptcy court of jurisdiction to determine that the purported creditor lacked standing to seek such relief. We said that "the state court finding of 'standing' was not a final judgment to which [*Rooker-Feldman*] could attach," explaining that "attempts merely to relitigate an issue determined in a state case are properly analyzed under issue or claim preclusion principles rather than *Rooker-Feldman*." *Id.* at 1261. In a footnote we observed that the federal district courts in Colorado had "reached differing results concerning whether orders in Rule 120 proceedings have . . . sufficient finality under the *Rooker-Feldman* doctrine to prevent relitigation in subsequent federal proceedings," and stated that we found "those cases denying . . . *Rooker-Feldman* treatment more persuasive." *Id.* at 1262 n. 6. Later

11

seeking to set aside either order. Her claims are based on events predating the Rule 120 proceedings. She could certainly obtain damages from the defendants without setting aside the foreclosure sale. To be sure, the relief she seeks includes obtaining title to her home, a result that would be inconsistent with the Rule 120 order approving sale. But inconsistent judgments are the province of preclusion doctrine, which can sort out what happens if one court says Plaintiff owns the home while another says she does not. The province of *Rooker-Feldman* is solely challenges to judgments. Within the federal judicial system, the authority to set aside state-court judgments is the exclusive province of the United States Supreme Court. The *preclusive effect* of state-court judgments, in contrast, is part of the lower courts' bread and butter.

An example may elucidate the point. Assume that two suits are filed simultaneously in federal and state court. In federal court, X sues Y to quiet title to Blackacre in favor of X. In state court, Y sues X to quiet title to Blackacre in favor of Y. The federal suit is not challenging any state-court judgment, so it is not barred by *Rooker-*

---

unpublished opinions by this court, however, have indicated that orders approving the sale in Rule 120 proceedings may have some *Rooker-Feldman* consequences. *See Dillard v. Bank of New York*, 476 F. App'x 690, 692 n.3 (10th Cir. 2012) ("We recognize that Rule 120 proceedings are not amenable to application of the *Rooker–Feldman* doctrine. . . . Ms. Dillard, however, is not seeking to enjoin the sale of her home; rather, she is attempting to completely undo the foreclosure and eviction proceedings, which were both final before she ever initiated this suit. Under these circumstances, *Rooker–Feldman* bars her claims."); *Castro v. Kondaur Capital Corp.*, 541 F. App'x 833, 837 (10th Cir. 2013) (similar); *see also McDonald v. J.P. Morgan Chase Bank, N.A.*, 661 F. App'x 509, 512 (10th Cir. 2016) (without mentioning Rule 120 (apparently incorrectly), stating that "*Rooker-Feldman* does apply to the foreclosure judgment"). We need not decide on this appeal whether our holding in *In re Miller* extends to a challenge to an order approving sale, as opposed to a finding of standing in the course of entering an order authorizing sale.

12

*Feldman*. Even if the state litigation results in a judgment in favor of Y while the federal suit is pending, *Rooker-Feldman* does not keep the federal case from proceeding, although the result in the federal suit may well be affected by the preclusive effect of the state-court judgment. This is not simply a matter of timing. Even if the federal suit had been brought after judgment was entered in the state litigation, the federal suit would not be barred by *Rooker Feldman* unless "an element of the claim [was] that the state court wrongfully entered its judgment." *Campbell,* 682 F.3d at 1283.

In this case, to proceed on her federal-court claims for damages and to obtain a declaration that she has title to her home, Plaintiff need not set aside, or challenge in any way, the Rule 120 decision. All the facts she alleges in the Complaint to obtain such relief preexisted the Rule 120 proceedings. She can prove her claims without any reference to the state-court proceedings. The present litigation thus does not "complain[] of injuries caused by [the Rule 120 decision]." *Campbell*, 682 F.3d at 1283 (internal quotation marks omitted). In other words, because there is no need to set aside, or even consider the validity of, the Rule 120 decision for Plaintiff to establish her claim, we cannot say that "an element of the claim" is that the Rule 120 order was "wrongful." *Id.* at 1284.

We therefore must set aside the district court's *Rooker-Feldman* dismissal of all of Plaintiff's claims except the RESPA claim (which was dismissed on the merits). We express no view on the merits of those claims. In particular, we leave to the district court in the first instance to determine whether the Rule 120 proceedings and the sale of

13

Plaintiff's home have any effect (preclusive, equitable, or otherwise) on the resolution of her claims or the relief to which she is entitled.

## V.  CONCLUSION

We **AFFIRM** the district court's dismissal of Plaintiff's claim under RESPA.  We **REVERSE** the district court's jurisdictional dismissal of the other claims and **REMAND** to the district court for further proceedings.  We **GRANT** Defendant's motion to strike Plaintiff's response to its Fed. R. App. P. 28(j) letter.