**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:14-cv-3092-RBJ-CBS

MARY M. MAYOTTE, an individual;

    Plaintiff,

vs.

US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET INVESTMENT LOAN TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-4; and WELLS FARGO BANK N.A.,

    Defendants.

_____

**MOTION TO STAY PROCEEDING PENDING FINAL
RESOLUTION OF PARALLEL STATE COURT PROCEEDING**
_____

Defendants U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-4 ("U.S. Bank"); and Wells Fargo Bank, N.A. ("Wells Fargo") submit this Motion to Stay Proceeding Pending Final Resolution of Parallel State Court Action, stating as follows:

**CONFERRAL CERTIFICATION**

Pursuant to D.C.COLO.LCivR 7.1(a), Defendants' Counsel has conferred in good faith with Plaintiff Mary Mayotte's counsel, and Mayotte opposes staying this proceeding.

**INTRODUCTION**

This lawsuit is one of several, in both state and federal (trial and appellate) courts, related to residential real property located at 23 South Garfield, Denver, Colorado 80209 (the "Property"). After the Denver District Court authorized a foreclosure sale of the Property on November 12, 2014 in Case No. 2013CV035162 (the "Rule 120 Proceeding"), Mayotte initiated

this lawsuit on November 13, 2014.  *See* Verified Original Complaint [ECF 1].  The foreclosure sale occurred the next month.  *See* Verified Complaint in Forcible Entry and Unlawful Detainer, filed August 15, 2016, at ¶ 4, attached as **Exhibit 1**.  As explained below, a related state court action is currently on appeal.  The appeal addresses Mayotte's state court claim that U.S. Bank's foreclosure was improper.  Mayotte's appeal also purports to cover various claims relating to Wells Fargo's servicing of her loan.

After remand from the Tenth Circuit, Mayotte filed her Third Amended Complaint and Demand for Jury Trial ("Third Amended Complaint") [ECF 89] in this lawsuit on April 13, 2018.  Overlapping facts, issues, and claims related to the servicing of Mayotte's mortgage and the foreclosure upon the Property are at the center of both the above-referenced ongoing state court action and this lawsuit.  This overlap warrants staying this lawsuit until final resolution of the ongoing state court action.  Specifically, the *Colorado River* doctrine supports staying these proceedings pending final resolution of the state court action.  In the alternative, the *Younger* abstention doctrine merits abstention as to Mayotte's declaratory judgment claim and a stay as to Mayotte's claims for monetary damages until final resolution of the pending state court action.

## PROCEDURAL POSTURE

U.S. Bank filed an eviction action (the "State Court Action") on August 15, 2016 to remove Mayotte from the Property U.S. Bank purchased at a foreclosure sale nearly two years prior.  *See* Exhibit 1.  Due to Mayotte's assertion of counterclaims against U.S. Bank seeking more than $15,000 in damages, the State Court Action was transferred to Denver District Court.  Mayotte later asserted third-party claims against Wells Fargo as well.  *See* First Amended Answer, Affirmative Defenses, Counterclaims and Third Party Claims ("Amended Answer"),

filed March 16, 2017, attached as **Exhibit 2.** Wells Fargo and U.S. Bank jointly moved to dismiss the counterclaims and third-party claims, and that motion was granted. *See* Order Re: Motion to Dismiss, issued May 30, 2017, attached as **Exhibit 3**.

After the district court awarded U.S. Bank possession of the Property, Mayotte appealed the dismissal of her claims and the finding of her unlawful detainer of the Property. *See* Opening Brief, filed on March 1, 2018 in Case No. 17CA1763, attached as **Exhibit 4**. U.S. Bank has now filed an answer brief in that state court appeal. *See* Answer Brief, filed May 7, 2018, attached as **Exhibit 5**. And Wells Fargo has filed a motion to strike relief requested as to Wells Fargo from the appeal given that Mayotte did not actually name Wells Fargo in the appeal. *See* Motion, filed May 7, 2018, attached as **Exhibit 6**. As relevant here, the Court of Appeals will be deciding:

- Whether the trial court properly dismissed Mayotte's claims for declaratory judgment, Colorado Consumer Protection Act ("CCPA") violations, fraudulent misrepresentation, and abuse of process that related to the servicing of her mortgage, the 2014 foreclosure, and an alleged but unwritten mortgage loan modification agreement, *see* Exhibit 4 at 7, 41-48; *see also* Exhibit 2;

- Whether the trial court correctly credited Rule 120 Proceeding evidence when determining U.S. Bank's Ownership of the Property, *see* Exhibit 4 at 6-7, 32-38;

- Whether Mayotte can challenge the Rule 120 Proceeding years after it ended, *see id.* at 6-7, 33-36; and

- Whether Mayotte perfected any appeal against Wells Fargo, *see* Exhibit 6.

Meanwhile, Mayotte's Third Amended Complaint seeks adjudication of eleven claims, including claims for declaratory judgment, CCPA violations, and fraudulent misrepresentations, and generally alleges that:

- The 2014 foreclosure was illegal, *see* Third Amended Complaint [ECF 89] at ¶ 142 (negligence claim);

- The Rule 120 Proceeding was void, *see id.* at 214-20 (declaratory judgment claim);

- Wells Fargo acted improperly in servicing her mortgage, *see id.* at 133-79 (negligence, CCPA, misrepresentation, Fair Debt Collection Practices Act, Fair Credit Reporting Act, unjust enrichment, and accounting claims); and

- Defendants breached an alleged mortgage loan modification agreement, *see id.* at 181-97 (breach of contract claim).

## **ARGUMENT**

### I. **The *Colorado River* Doctrine Supports Staying Plaintiffs' Claims Until Final Resolution Of The Parallel State Court Action**

A district court maintains discretion to stay a proceeding in "situations involving the contemporaneous exercise of concurrent jurisdictions . . . by state and federal courts." *Fox v. Maulding*, 16 F.3d 1079, 1080-81 (10th Cir. 1994) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 19 (1983) ("the decision whether to defer to the state courts is necessarily left to the discretion of the district court in the first instance"). "*Colorado River* concerns itself with efficiency and economy. Its goal is to preserve judicial resources." *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013).

If state and federal proceedings are deemed "parallel," a district court examines a non-exhaustive list of factors to determine whether a stay is appropriate. *Fox*, 16 F.3d at 1081-82. "No single factor is dispositive." *Id.* at 1082. Here, the factors favoring a stay are:

- Whether the state court assumed jurisdiction over property;
- The ability to avoid piecemeal litigation;
- The amount of progress in each of the parallel proceedings;
- Whether federal law provides the rule of decision; and
- Whether the state court can protect the federal litigant's rights.

*See Moses H. Cone*, 460 U.S. at 19–27; *Colo. River*, 424 U.S. at 818–19; *Fox*, 16 F.3d at 1082.[1]

### 1. This Lawsuit And The State Court Action Are Parallel

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Fox*, 16 F.3d at 1081. Here, the parties in this lawsuit are identical to those in the State Court Action. *See* Exhibit 2 at 1.[2] And the issues are substantially the same—the servicing of Mayotte's mortgage and foreclosure upon the Property. *Compare* Third Amended Complaint [ECF 89] at ¶¶ 1-8, 19-83, 88-121 *with* Exhibit 2 at ¶¶ 25-95. Tellingly, Mayotte raised many of the same claims in the State Court Action that she raises in this lawsuit. *Compare* Answer and Counterclaims, filed August 26, 2016, attached as **Exhibit 7** (asserting claims for negligent supervision and hiring, CCPA violations, negligent misrepresentation, and breach of contract); *and* Exhibit 2 (asserting claims for CCPA violations, fraudulent

---

[1] For the sake of concision, Defendants do not address non-applicable factors, such as inconvenience of the federal forum, impermissible forum-shopping, or bad faith invocation of federal jurisdiction.

[2] The additional party in the State Court Action, America's Servicing Company ("ASC"), is of no import because ASC is merely a "d/b/a" of Wells Fargo.

5

misrepresentations, and declaratory judgment) *with* Third Amended Complaint [ECF 89] (asserting claims for, among other things, negligent supervision and hiring, CCPA violations, fraudulent misrepresentation, negligent misrepresentation, breach of contract, and declaratory judgment).

Claims Mayotte raises only in this lawsuit still relate to the same issues common between the proceedings. *See* Third Amended Complaint [ECF 89] at ¶¶ 133-46 (alleging negligence in the servicing of her mortgage and a supposedly "illegal foreclosure"), 199-206 (alleging FDCPA violations related to servicing of her mortgage and foreclosure upon the Property), 208-12 (alleging FCRA violations stemming from servicing of her mortgage and foreclosure upon the Property), 222-24 (alleging unjust enrichment based on improper servicing of her mortgage), *and* 226 (requesting an accounting due to allegedly improper servicing of her mortgage). Therefore, this lawsuit is parallel with the State Court Action.

### 2. The State Court Action Assumed Jurisdiction Over The Property

"[T]he court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Colo. River*, 424 U.S. at 818. When proceedings are *in rem* or *quasi in rem*, "the state or federal court having custody of such property has exclusive jurisdiction to proceed." *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964). Here, Colorado state courts first exercised jurisdiction over the Property in the Rule 120 Proceeding. Now, the State Court Action has exercised jurisdiction over the Property by granting possession to U.S. Bank. *See* Order and Judgment for Possession, issued September 13, 2017, attached as **Exhibit 8**. Yet, Mayotte seeks to have this Court exercise jurisdiction over the Property by "declar[ing] that the foreclosure was void" and, thereby, raising questions as to the propriety of the Order and

Judgment of Possession issued in the State Court Action, which is currently being appealed. *See* Third Amended Complaint [ECF 89] at ¶ 220. Such a request upends the "methods of procedure as shall serve to conciliate the distinct and independent tribunals of the States and of the Union, so that they may co-operate as harmonious members of a judicial system coextensive with the United States." *United States v. Bank of N.Y. & Trust Co.*, 296 U.S. 463 477-78 (1936) (internal quotations omitted). Therefore, a stay appropriately defers to the state court that first assumed jurisdiction over the Property.

### 3. A Stay Avoids Piecemeal Litigation

"The attempt to avoid piecemeal litigation is arguably the most essential element of the *Colorado River* doctrine, as it is directly connected to the goal to preserve judicial economy." *Nat'l Ass'n of Investors Corp. v. Bivio, Inc.*, No. 11-cv-02435-WJM, 2013WL316021, at *10 (D. Colo. Jan. 28, 2013); *see also D.A. Osguthorpe Family P'Ship*, 705 P.3d at 1234 (describing avoiding piecemeal litigation as the "paramount consideration"). "[T]he granting of a discretionary stay in order to avoid multiple and piecemeal litigation is oftentimes appropriate where concurrent state and federal actions exist." *SBM Site Servs., LLC v. Garrett*, No. 10-cv-385-WJM-BNB, 2012WL975878, at *1 (D. Colo. Mar. 22, 2012). "[S]imultaneous adjudications regarding identical facts and highly similar legal issues creates the risk of inconsistent judgments." *Nat'l Union Fire Ins. Co.*, 115 F.Supp.2d at 1248.

Because of the overlapping factual and legal issues between this lawsuit and the State Court Action, a stay may narrow the scope of this case after final resolution of the State Court Action, or preclude it entirely. Narrowing the issues in this lawsuit conserves judicial resources by having a single court address claims raised in both forums. Mayotte has appealed rulings on

her claims of fraudulent misrepresentation, declaratory judgment, and CCPA violations in the State Court Action. *See* Exhibit 4 at 41-42, 46-48. Thus, preclusion doctrines could bar relitigation of certain claims and issues in this lawsuit after final resolution of the State Court Action, if not all of them.

A stay will not invoke appellate jurisdiction, and thus does not create additional appellate litigation. *See Crystal Clear Commc'n, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1176 (10th Cir. 2005) ("If a stay merely delays litigation and does not effectively terminate proceedings, it is not considered a final decision"). Here, the precise degree of any narrowing accomplished through a stay pending final resolution of the State Court Action is presently indeterminable. But that indeterminacy still is more efficient than litigating overlapping lawsuits simultaneously. And, because a federal court would later need to evaluate the scope of the remaining federal action, a stay would not be subject to immediate appeal. *See id.; see also Fox*, 16 F.3d at 1083 ("the better practice is to stay the federal action pending the outcome of the state proceedings. In the event the state court proceedings do not resolve all the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without the plaintiff having to file a new federal action").

### 4. The Substantial Progress In The State Court Action Favors A Stay

While this factor is commonly framed as the order in which courts obtained jurisdiction, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 3. Here, the State Court Action is on appeal. In contrast, this federal lawsuit is still in the pleadings stage: Mayotte has now submitted her fourth complaint, Defendants are in the process of

answering, no scheduling order has issued, and formal discovery has yet to commence. Thus, the core notions of the *Colorado River* doctrine—efficiency and economy—promote staying this action to eventually limit its scope.

### 5. State Law Predominates Both This Lawsuit And The State Court Action

When a majority of claims invoke state law for their determination, that weighs in favor of a stay under the *Colorado River* doctrine. *See Makeen Inv. Grp., LLC v. Woodstream Falls Condo. Ass'n, Inc.*, No. 16-cv-1250-WJM-CBS, 2017WL8309979, at *5 (D. Colo. Aug. 22, 2017). Here, only two of Mayotte's eleven claims involve federal law. And Mayotte's claims under FDCPA and FCRA rely on underlying state law findings related to theories of negligence, fraud, and unjust enrichment. *See* Third Amended Complaint [ECF 89] at ¶¶ 200-212 (using the assumption of favorable outcomes regarding state law claims to state FDCPA and FRCA claims). This mirrors the situation in *John J. Pembroke Living Trust v. U.S. Bank Nat'l Assoc. for WaMu Series 2006-AR11 Trust*, where the court found that because the plaintiff's federal law claims relied upon receiving favorable state law rulings, "[s]tate law provide[d] adequate rules for addressing these underlying issues." *See* 16-cv-20-CMA-MEH, 2016WL9710025, at *4 (D. Colo. Oct. 24, 2016) (staying action pending resolution of state court proceeding). Therefore, the predominance of state law issues in this lawsuit favors a stay pending final resolution of the State Court Action.

### 6. The State Court Action Protects Mayotte's Rights

To determine whether a state court action will protect a federal plaintiff's rights, district courts often examine whether the federal plaintiff can assert the applicable claims in the state

court action.[3] *See ALPS Prop. & Cas. Ins. Co. v. Bell*, No. 14-cv-1868-WJM-KLM, 2015 WL 2148430, at *4 (D. Colo. May 6, 2015). Here, Mayotte has shown that she could have and did assert many of the claims she raises here in the State Court Action. *See* Sections I.1 *supra* and II.1.A *infra*.

## II. Alternatively, *Younger v. Harris* Requires Dismissal Of Plaintiffs' Declaratory Judgment Claim And A Stay Of Plaintiffs' Remaining Claims

Mayotte's declaratory judgment claims in both this lawsuit and the State Court Action subject this lawsuit to the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny. "*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court." *Amanatullah v. Colo. Bd. Of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999). "*Younger* abstention is non-discretionary; it must be invoked once [its] three conditions are met." *Id.* As a threshold issue, the Supreme Court has held that "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions" qualify for analysis under the *Younger* conditions. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). When a case qualifies for analysis under the *Younger* conditions, "[a] federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and

---

[3] Notably, the Court in *John J. Pembroke Living Trust* found the state court action to adequately protect the federal plaintiff's rights when, like here, the federal plaintiff's claims for which federal law governed were premised on favorable rulings regarding state law issues, such as the validity of an endorsement on a note or the propriety of a foreclosure. *See* 16-cv-20-CMA-MEH, 2016WL9710025, at *8.

(3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 875 (10th Cr. 2001).[4] Mayotte's declaratory judgment claim meets the requirements of the *Younger* doctrine, which mandates abstention.

### 1. The Adequacy of the State Court Forum And The Important State Interests At Stake Satisfy The *Younger* Elements

Because the State Court Action provides an adequate forum for Mayotte's declaratory judgment claim and involves important state interests that traditionally look to state law for their resolution, the *Younger* doctrine requires abstention.

#### A. The State Court Action Is An Adequate Forum

Under the *Younger* doctrine, a plaintiff bears the burden to establish that the state court is an inadequate forum. *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1292 (10th Cir. 1999). "Typically, a plaintiff has an adequate opportunity to raise federal claims in state court 'unless state law clearly bars the interposition of the [federal statutory] and constitutional claims.'" *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003) (quoting *J.B. ex rel. Hart*, 186 F.3d at 1292). "[W]hen a federal litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil*, 481 U.S. at 15.

---

[4] That Mayotte filed this lawsuit before the State Court Action began does not change the applicability of the *Younger* doctrine due to the infancy of these proceedings. *See Hicks v. Miranda*, 422 U.S. 332, 349 (1975) (holding *Younger* doctrine applies despite earlier filed federal lawsuit when "no proceedings of substance on the merits have taken place in the federal court").

11

Mayotte had an opportunity to raise the claims from this lawsuit in the State Court Action. In fact, Mayotte raised claims of negligent supervision and hiring (claim II here), violations of the Colorado Consumer Protection Act ("CCPA") (claim III here), negligent misrepresentation (claim V here), fraudulent misrepresentation (claim IV here), breach of contract (claim VI here), and declaratory judgment (claim IX here) in the State Court Action. *See* Exhibit 7; *and* Exhibit 2. As such, the State Court Action constitutes an adequate forum for Mayotte to raise not only her declaratory judgment claim, but also any of the other claims presented in her Third Amended Complaint [ECF 89].[5]

### B. The State Court Action Involves Important State Interests

Mayotte has used, and continues to use, the State Court Action as a forum to challenge not only the propriety of the finding that she was in unlawful detainer of the Property but also the outcome of the Rule 120 Proceeding. *See* Exhibit 4 at 9-11, 21, 23-27. Therefore, the State Court Action involves issues of eviction and foreclosure. And both foreclosure and eviction are matters that involve important state interests and look to state law and policies for their resolution. *See* C.R.S. § 13-40-101 *et seq.* (evictions); C.R.S. § 38-38-101 *et seq.* (foreclosures); *and* C.R.C.P. 120 (foreclosures); *see also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994) (addressing foreclosure sales under state law and finding it "beyond question that an essential state interest is at issue"); *Beller Props., LLC v. Lowe Enters. Residential Investors, LLC*, No. 07-cv-149-MSK-MJW 2007WL1346591, at *3 (D. Colo. May 7, 2007) ("Actions that challenge the Rule 120 order and process are proceedings involving important state interests

---

[5] Section I.6. *supra* contains additional discussion about Mayotte's ability to raise her claims in the State Court Action.

concerning title to real property located and determined by operation of state law"). Thus, Mayotte's declaratory judgment claim satisfies the *Younger* conditions.

### 2. Plaintiff's Claims Involve Orders That Uniquely Further Colorado's Ability To Perform Its Judicial Function

The State Court Action "involv[es] certain orders that are uniquely in furtherance of the [Colorado courts'] ability to perform their judicial functions." *See Sprint Commc'ns*, 571 U.S. at 73, 79 (citing *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977)); and *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987)). Principally, the state court is uniquely positioned to decide the effect of the evidence and decisions in Rule 120 proceedings, and should be allowed to complete that work on appeal. Mayotte's declaratory judgment claim seeks to have this Court void the 2014 foreclosure. *See* Third Amended Complaint [ECF 89] at ¶ 220 ("affirmatively ask[ing] this Court to . . . declar[e] that the foreclosure was void"). She already asked for this same relief in the State Court Action, in both a declaratory judgment claim and a defense against U.S. Bank's ownership claim to the Property, which was a prerequisite to evicting Mayotte. *See* Exhibit 2 at ¶¶ 156-71 (declaratory judgment request regarding allegedly void foreclosure); *and* Exhibit 4 at 32-41 (appealing adverse ruling as to ownership defense). The trial court in the State Court Action first held Mayotte's declaratory judgment claim barred by the Colorado Credit Agreement Statute of Frauds, *see* Exhibit 3, and then held after trial that evidence, including orders issued in the Rule 120 Proceeding, established U.S. Bank's ownership of the Property notwithstanding Mayotte's ownership defense. *See* Exhibit 8.

Now, by asking this Court to void the 2014 foreclosure, Mayotte is asking this Court to rule on an issue currently before the Colorado Court of Appeals in the State Court Action. *See* Exhibit 4 at 35-39 (arguing error because allegedly void foreclosure cannot pass title). Such a

13

request invokes the *Younger* doctrine because the State Court Action involves reliance on evidence from the Rule 120 Proceeding, and both the State Court Action and the Rule 120 Proceeding involve transferring real property through court orders. Thus, Mayotte's federal declaratory judgment claim is in tension with the furtherance of Colorado's state courts performing their judicial functions. *See Pennzoil*, 481 U.S. at 13 (holding "forcing persons to transfer property in response to a court's judgment" constituted an important state interest in administering the judicial system); *accord Sprint Commc'ns.*, 571 U.S. at 73, 79.

Because Mayotte's declaratory judgment claim requires this Court to address state court orders that further the judiciary's function, the *Younger* doctrine applies to this lawsuit. *See John J. Pembroke Living Trust*, No. 16-cv-00020-CMA-MEH, 2016 WL 9710025, at *4 (adopting recommendation that "a complaint seeking injunctive or declaratory relief directly related to [a] state foreclosure proceeding constitutes an exceptional circumstance under *Sprint*") (internal quotations omitted); *and Conry v. Barker*, No. 14-cv-02672-CMA-KLM, 2015 WL 5608133 (D. Colo. Sep. 24, 2015) (applying *Younger* doctrine to abstain from ruling on declaratory judgment claim that implicated issues on appeal in state court).

### 3. *Younger* Also Requires Staying Plaintiff's Remaining Claims Until Final Resolution Of The State Court Action

Abstaining from Mayotte's declaratory judgment claim still leaves ten claims pending. The proper resolution for Mayotte's remaining claims is to stay these proceedings and return after a final resolution of the State Court Action. "Where the plaintiff in the federal suit seeks damage relief and the *Younger* factors are met, the district court should *stay* federal proceedings on the damage claims." *Buck v. Meyers*, 244 Fed. App'x 193, 198 (10th Cir. 2007).

Mayotte's remaining claims seek damages and primarily look to state law for their resolution.[6] *See* Third Amended Complaint [ECF 89] at ¶¶ 133-46 (seeking damages for negligence), 148-55 (seeking damages for negligent supervision and hiring), 157-65 (seeking damages for CCPA violations), 167-72 (seeking damages for fraudulent misrepresentations), 174-79 (seeking damages for negligent misrepresentations), 181-97 (seeking damages for breach of contract), 199-206 (seeking damages under the FDCPA); 208-12 (seeking damages under the FCRA), and 222-24 (seeking damages for unjust enrichment).[7] Mayotte's remaining claims also are based upon the same circumstances related to both her declaratory judgment claim and the ongoing State Court Action—the servicing of her mortgage and foreclosure upon the Property. *See id.* at ¶¶ 1-8, 19-83, 88-121; *and* Exhibit 2 at ¶¶ 25-95. Therefore, the *Younger* doctrine requires a stay of Mayotte's remaining claims pending final resolution of the State Court Action.

## **CONCLUSION**

WHEREFORE, U.S. Bank and Wells Fargo respectfully request that this Court stay this lawsuit until final resolution of the State Court Action.

---

[6] Mayotte's final claim for an accounting does not affirmatively seek damages. *See* Third Amended Complaint [ECF 89] at ¶¶ 226. However, because the relief Mayotte seeks through an accounting is equitable, governed by state law, and related to the same facts that form the basis for her declaratory judgment claim, the above analysis regarding abstention as to Mayotte's declaratory judgment claim applies to her accounting claim.

[7] Mayotte's FDCPA and FCRA claims, while brought under federal law, are premised on underlying state law issues, making state law the primary focus of the claims. *See See John J. Pembroke Living Trust*, No. 16-cv-00020-CMA-MEH, 2016 WL 9710025, at *8.

DATED: May 21, 2018.

*s/Neal McConomy*
Jessica E. Yates
Neal McConomy
Snell and Wilmer L.L.P.
1200 17th Street, Suite 1900
Denver, CO  80202
Ph: 303.634.2000
jyates@swlaw.com; nmcconomy@swlaw.com
*Attorney for Defendants U.S. Bank National Association and Wells Fargo Bank, N.A.*

## CERTIFICATE OF SERVICE

I certify that on May 21, 2018, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to all parties of record.

*s/Amy Kovarsky*

4823-8403-5683.2