FILED
United States Court of Appeals
Tenth Circuit

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

January 22, 2021

Christopher M. Wolpert
Clerk of Court

MARY M. MAYOTTE,

    Plaintiff - Appellant,

v.

U.S. BANK NATIONAL ASSOCIATION, as Trustee for Structured Asset Investment Loan Trust Mortgage Pass–Through Certificates, Series 2006-4; and WELLS FARGO BANK, N.A.,

    Defendants - Appellees.

No. 20-1027

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:14-CV-03092-RBJ)**
_____

Brad Kloewer, Cain & Skarnulis, Salida, Colorado, on behalf of the Plaintiff-Appellant.

Andrew M. Jacobs, Snell & Wilmer, Phoenix, Arizona (Anna M. Adams, Snell & Wilmer, Denver, Colorado, with him on the briefs), on behalf of the Defendants-Appellees.
_____

Before **HOLMES**, **BACHARACH**, and **EID**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This appeal grows out of the interplay between remedies for tort and breach of contract. Remedies are often broader for tort than for breach of contract, and claimants often seek the broader tort remedies for conduct considered wrongful only because it violates a contractual duty. To enforce the limits on contractual remedies, courts employ a doctrine known as the "economic-loss rule." *See* Restatement (Third) of Torts: Liability for Economic Harm § 3 (Am. L. Inst. 2020). Under this rule, tort remedies are ordinarily unavailable for economic losses resulting from violation of contractual duties in the absence of an independent duty growing out of a special relationship between the parties. *Id.* & cmt.g.

The overarching issue here is whether the economic-loss rule prevents use of tort remedies for a lender's failure to carry out its promises. The district court answered "yes," rejecting the plaintiff's effort to recover tort remedies for wrongful conduct consisting solely of alleged contractual breaches. We agree with the district court.

1. **Ms. Mary Mayotte sues for torts based on Wells Fargo's alleged breach of an agreement.**

The claims grew out of Ms. Mary Mayotte's mortgage with U.S. Bank, which used Wells Fargo to service the loan. Ms. Mayotte sought modification of the loan and alleges that Wells Fargo had agreed to modify her loan if she withheld three payments. Based on this alleged

understanding, Ms. Mayotte withheld three payments. But Wells Fargo denies agreeing to modify the loan, and U.S. Bank eventually foreclosed.

The foreclosure spurred Ms. Mayotte to sue U.S. Bank and Wells Fargo, asserting statutory claims (violation of the Colorado Consumer Protection Act), tort claims (negligence, negligent supervision, and negligent hiring), and a claim for a declaratory judgment. The district court granted summary judgment to U.S. Bank and Wells Fargo, relying in part on the economic-loss rule and Ms. Mayotte's failure to present evidence of compensatory damages.[1]

## 2. We engage in de novo review based on the summary-judgment standard that applied in district court.

Because this is a diversity action brought in the District of Colorado, we apply Colorado law for substantive matters and federal law for the standard of review. *Prager v. Campbell Cty. Mem'l Hosp.*, 731 F.3d 1046, 1060 (10th Cir. 2013). Under federal law, we conduct de novo review of the award of summary judgment. *Zahourek Sys., Inc. v. Balanced Body Univ., LLC*, 965 F.3d 1141, 1143 (10th Cir. 2020). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[1] The district court alternatively relied on other grounds, but we need not address those grounds.

3

**3.     The economic-loss rule prevents economic and declaratory relief.**

Like most states, Colorado has adopted the economic-loss rule. *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1259–64 (Colo. 2000); *see Wiltz v. BayerCropScience, Ltd.*, 645 F.3d 690, 695 (5th Cir. 2011) (stating that the economic-loss rule has been adopted in most jurisdictions). The applicability of the economic-loss rule is an issue of law. *See Town of Alma*, 10 P.3d at 1263–64 ("'The court determines, as a matter of law, the existence and scope of the duty'. . . . Consistent with this duty analysis, we now expressly adopt the economic loss rule." (quoting *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987)); *see also Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) ("Whether the economic-loss rule operates to bar [the party's] fraud counterclaim 'is an issue of law . . . .'" (quoting *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162 (10th Cir. 2008))).

Under Colorado law, a plaintiff alleging an economic loss from a breach of contract ordinarily lacks a cause of action for a tort. *Town of Alma*, 10 P.3d at 1264. A tort would exist only if the wrongful action violated a duty existing independently of the contract. *Id.*

Invoking the economic-loss rule, the district court granted summary judgment to U.S. Bank and Wells Fargo on the claims for economic and declaratory relief.[2] We agree with this conclusion because Ms. Mayotte

- has not shown an independent duty and
- has forfeited her new arguments on the claims for a statutory violation and declaratory judgment.

### A. No independent duty exists to support the tort claims.

When deciding whether a potential tort duty exists, Colorado courts generally consider

- the risk involved,
- the foreseeability and likelihood of injury weighed against the social utility of the defendant's conduct,
- the burden of guarding against injury or harm, and
- the consequences of placing the burden on the defendant.

*A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 868 (Colo. 2005).

But in the context of the economic-loss rule, a defendant can incur liability for economic losses only if the underlying duty is "independent." *S K Peightal Engineers, LTD v. Mid Valley Real Estate Sols. V, LLC,* 342 P.3d 868, 875 (Colo. 2015). A duty is independent if it

---

[2] The district court also relied on the economic-loss rule to bar recovery for non-economic losses. We address those remedies separately.

- lies beyond the scope of contractual duties or

- arises in the context of a "special relationship," such as an attorney-client, physician-patient, or insurer-insured relationship.

*Id.*

Ms. Mayotte's relationship with U.S. Bank was governed by a contract, but Ms. Mayotte has not asserted a claim for breach of contract. She instead asserts claims involving torts, violation of a statute, and declaratory relief.

For the torts, Ms. Mayotte argues that U.S. Bank and Wells Fargo had duties outside of the contract. We reject this argument.

In district court, Ms. Mayotte did not present an argument or evidence about the existence of independent duties. Though she alleged duties of care, she didn't allege

- the creation of these duties outside of the contract or

- the existence of a special relationship with the defendants.[3]

---

[3] Ms. Mayotte did say in a subheading: "Wells Fargo and US Bank Owed Duties Independent of the Contract with Ms. Mayotte, and Therefore this Action Arises in Tort." Appellant's App'x, vol. 9, at 2367. But in the body of the brief, Ms. Mayotte did not explain how these duties existed independently of the contract. *See Sierra Club, Inc. v. Bostick*, 787 F.3d 1043, 1060 n.18 (10th Cir. 2015) (concluding that the petitioners had failed to adequately brief an argument beyond a heading in their opening brief).

6

On appeal, Ms. Mayotte relies on a report from her expert witness and admissions by a Wells Fargo employee. But the existence of an independent duty involves a matter of law, not fact. *See* p. 4, above.

Ms. Mayotte's expert witness didn't purport to opine on the banks' legal duties. In his report, the expert witness simply opined on the facts relating to what "a reasonably careful and ethical servicer should be able to do." Report of James E. McNulty at 3 (Dkt. No. 134-7).[4] This opinion does bear on the banks' responsibility to carry out obligations in a commercially reasonable manner. *See* Report of James E. McNulty at 3 (Dkt. No. 134-7); Appellant's App'x at 2347–55. But that duty inheres in every contract as an implied duty of good faith and fair dealing. *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo. 1995), *as modified on denial of reh'g* (Jan. 16, 1996). This duty does not exist independently of the contract. *Top Rail Ranch Estates, LLC v. Walker,* 327 P.3d 321, 329 (Colo. App. 2014).

Though the expert witness addressed matters bearing on the implied duty of good faith and fair dealing, he didn't purport to identify the banks' legal duties. He couldn't, for the existence of a legal duty lies within the sole province of the court. *See Black v. Black*, 422 P.3d 592, 610 (Colo.

---

[4] In the appendix, Ms. Mayotte did not include the copy of the expert report attached to her summary-judgment motion. The report appears in the appendix only as an attachment to Ms. Mayotte's response to the defendants' motion to exclude expert testimony.

7

App. 2018) (stating that an expert witness's testimony on "the correct legal standard" would be inadmissible); *see also* p. 4, above. So even if the expert witness had purported to opine on the banks' legal duties, that opinion could not prevent summary judgment. *See Portenier v. United States*, 520 F. App'x 707, 716 (10th Cir. 2013) (unpublished) (concluding that the plaintiff's "marshalling of evidence cannot create . . . a legal duty" because the existence of a duty involves a pure issue of law).[5]

Ms. Mayotte also misstates the alleged "admissions" by Wells Fargo. On appeal, Ms. Mayotte states that "Wells Fargo admitted that it owed . . . duties." Appellant's Opening Br. at 48. In support, she cites pages 2347–55 of the appendix. These pages contain testimony about Wells Fargo's policies. Appellant's App'x at 2347–55. But the testimony doesn't address any duties, much less duties existing beyond the contract.

Ms. Mayotte also argues that she had a special relationship with the defendants. We disagree. Colorado does not recognize a special relationship between lenders and borrowers, so Colorado appellate courts routinely dismiss borrowers' negligence claims against lenders. *See Miller v. Bank of New York Mellon*, 379 P.3d 342, 348 (Colo. App. 2016) (upholding the dismissal of a negligence claim by borrowers against a

---

[5] *Portenier* is persuasive but not precedential. *See* 10th Cir. R. 32.1(A).

8

lender because no special relationship existed); *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 523 (Colo. App. 2006) (upholding the dismissal of borrowers' negligence claim); *Centennial Square, Ltd. v. Resolution Trust Co.*, 815 P.2d 1002, 1004 (Colo. App. 1991) (same), *cited by Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000).

Given the absence of an independent duty, the economic-loss rule bars Ms. Mayotte's tort claims for economic damages.

### B. Ms. Mayotte forfeited her argument that the economic-loss rule doesn't apply to the claims for violation of a statute or for a declaratory judgment.

Ms. Mayotte argues on appeal that the economic-loss rule doesn't apply to her claims for violation of a state statute or for a declaratory judgment. But she didn't make this argument in district court.

There U.S. Bank and Wells Fargo sought summary judgment on all of the claims, including those for violation of the Colorado Consumer Protection Act and for a declaratory judgment. But Ms. Mayotte didn't argue that these claims would have triggered an exception to the economic-loss rule.[6] So the district court didn't have the benefit of the argument that Ms. Mayotte has made to us.

---

[6] In her reply brief, Ms. Mayotte argues that she preserved her opposition to application of the economic-loss rule on the statutory claim. But in district court, she argued only that the statutory claim was an independent source of liability; she didn't explain how the statutory claim existed independently of the contract or otherwise address her statutory claim in relation to the economic-loss rule.

9

Despite Ms. Mayotte's failure to preserve this argument, we could ordinarily consider it under the plain-error standard. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011). But Ms. Mayotte has not urged plain error, so we decline to consider this argument. *See id.*

**4. Ms. Mayotte failed to present any evidence of non-economic harm.**

Ms. Mayotte argues that even if the economic-loss rule bars recovery for economic harm, she could still recover for non-economic harm (like emotional distress). But she failed to present any evidence of non-economic harm.

In district court, U.S. Bank and Wells Fargo urged summary judgment based in part on a failure to prove compensatory damages. In support, U.S. Bank and Wells Fargo

- presented evidence that Ms. Mayotte had obtained a benefit worth $310,000 by living in her house for over ten years without making any payments and

- argued that the damages could not have outweighed the $310,000 benefit.

This argument triggered a burden for Ms. Mayotte to present evidence of non-economic harm. Fed. R. Civ. P. 56(c)(1)(A), (c)(3).

Ms. Mayotte responded by pointing out that she had alleged emotional distress. But Ms. Mayotte could not satisfy her evidentiary burden by relying on the allegations in her complaint. *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1247 (10th Cir. 2013). For

those allegations, she needed to present evidence. *See, e.g.*, *Tull v. Gundersons, Inc.*, 709 P.2d 940, 943–45 (Colo. 1985).

On appeal, Ms. Mayotte argues that (1) the district court failed to consider various factors and (2) she had sought summary judgment only on liability. Both arguments are beside the point.

The district court properly relied on the evidence in the summary-judgment record, and Ms. Mayotte didn't present any evidence of non-economic harm. Despite the failure to present evidence of damages, she argues here that the district court should have considered various other factors, such as the value of the house at the time of the foreclosure, her payments before the foreclosure, and her emotional distress. But when she responded to the summary-judgment motion, she didn't identify these factors or present any supporting evidence.

Ms. Mayotte also argues that she sought summary judgment only on liability. But U.S. Bank and Wells Fargo sought summary judgment based in part on Ms. Mayotte's failure to prove compensatory damages. The defendants' argument for summary judgment triggered Ms. Mayotte's burden to respond, and the limited scope of her own summary-judgment motions was immaterial.

## 5. Conclusion

In our view, the district court properly granted summary judgment to U.S. Bank and Wells Fargo. They invoked the economic-loss rule, and Ms.

11

Mayotte failed to present any basis for recognition of a legal duty outside of the contract. So Ms. Mayotte cannot recover damages for economic losses. Nor can she recover other damages. U.S. Bank and Wells Fargo denied any proof of non-economic damage, and Ms. Mayotte failed to present evidence of such damage.

Given the economic-loss rule and failure to present evidence of non-economic damage, we affirm the award of summary judgment to U.S. Bank and Wells Fargo.

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

| Christopher M. Wolpert | | Jane K. Castro |
|---|---|---|
| Clerk of Court | January 22, 2021 | Chief Deputy Clerk |

Brad Kloewer
Cain & Skarnulis
101 North F Street, Suite 207
Salida, CO 81201

**RE:    20-1027, Mayotte v. U.S. Bank, et al**
         Dist/Ag docket: 1:14-CV-03092-RBJ

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

                                        Sincerely,

                                        Christopher M. Wolpert
                                        Clerk of the Court

cc: Anna Adams
Andrea McDonald Hicks
Andrew Martin Jacobs
Gregory J. Marshall

CMW/sds