IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:14-cv-3092-RBJ

MARY MAYOTTE,

    Plaintiff,

v.

U.S. BANK, N.A., AS TRUSTEE FOR STRUCTURED ASSET INVESTMENT
LOAN TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-4;

    AND

WELLS FARGO BANK, N.A.,

    Defendants.

---

**DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSE TO LETTER FROM CLERK OF COURT**

---

Defendants U.S. Bank National Association, as Trustee For Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-4, and Wells Fargo Bank, N.A. ("Defendants") hereby responds to the November 8, 2021 letter from the Clerk of the District Court disclosing that Judge R. Brooke Jackson or his wife owned stock in Wells Fargo while he presided over this case (the "Letter") [ECF 193].

In overview and as explained in more detail below, this Court need take no action in response to the information disclosed in the Letter for three reasons.  <u>First</u>, this case ultimately turned on a legal question of whether and how a homeowner could collaterally challenge state court foreclosure proceedings in federal court.  This legal question had no impact on Wells Fargo

or its stockholder's financial interests in any way that Judge Jackson or his wife's ownership of stock would create a question as to Judge Jackson's impartiality.  <u>Second</u>, that core legal question was reviewed de novo and affirmed by the United States Court of Appeals for the Tenth Circuit, further bolstering the credibility and impartiality of Judge Jackson's decision.  <u>Third</u>, Judge Jackson ceased presiding over this case three years ago.  Given the lack of actual bias and the backstop of de novo appellate review here, the interest of finality of judgments should govern, so that this Court should decline any suggestion that it should reopen this case and disturb the judgment here.  Accordingly, and as explained further below, this Court does not need to take any action in this case in light of the disclosure of Judge Jackson or his wife's ownership of Wells Fargo stock in 2016.

**BACKGROUND**

A. **Plaintiff Initiates Her Federal Court Suit Challenging a State Non-Judicial Foreclosure Proceeding.**

Plaintiff Mary Mayotte was the debtor on a note held by U.S. Bank, NA.  [ECF 31 at 10.] The note was secured by a deed of trust assigning a security interest in her home to the public trustee of Denver County and creating a power of sale in the trustee.  [*See* [ECF 31 at 14.]  Wells Fargo serviced the loan for U.S. Bank.  [ECF 31 at 11.]  Plaintiff defaulted on her obligations under the loan.  [ECF 31 at 11; ECF 37 at 3.]  Plaintiff alleged that she contacted Wells Fargo to modify her loan and was told by Wells Fargo that she needed to miss three payments to secure a modification, and that she eventually took this advice.  [ECF 31 at 11.]  In late 2014, non-judicial foreclosure proceedings to sell the home to pay the note were commenced in Colorado state court under Colorado Rule of Civil Procedure 120.  [ECF 31 at 14.]  On December 8, 2014,

before the sale, Plaintiff filed suit in the United States District Court for the District of Colorado. [*See* ECF 12; ECF 31.]

Plaintiff asserted claims for: (1) declaratory relief providing that defendants lacked any right to or interest in her home; (2) wrongful foreclosure; (3) quasi contract and unjust enrichment; (4) violation of the Fair Debt Collection Practices Act; (5) violation of Due Process under the Fifth and Fourth Amendments; and (6) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617 ("RESPA"). [ECF 31.]

On March 14, 2016, Judge Jackson adopted Magistrate Judge Shaffer's Report and Recommendation and concluded that all of Plaintiff's claims, except her claim under RESPA, were precluded by the *Rooker-Feldman* doctrine because they would effectively ask the Court to reexamine the state court's Rule 120 proceedings. [ECF 57.] Judge Jackson additionally adopted Magistrate Shaffer's recommendation that the RESPA claim be dismissed for failure to state a claim under Rule 12(b)(6) and also noted that Plaintiff did not object to Magistrate Shaffer's conclusion that she failed "to allege a causal connection between her claimed damages and the alleged violation of RESPA." [ECF 57 at 18.] Finally, Judge Jackson sua sponte dismissed Plaintiff's claims as to defendant Debra Johnson, Public Trustee for the City and County of Denver. [ECF 57 at 18–19.]

> **B.** **The Tenth Circuit Reverses Judge Jackson's Decision to Dismiss Plaintiff's Claims Under *Rooker-Feldman*.**

On appeal, the Tenth Circuit reversed, holding that "the federal-court suit before us is not barred by the *Rooker-Feldman* doctrine because none of the claims (at least none pursued on appeal) challenge the Rule 120 proceedings or seek to set aside the Rule 120 ruling." *Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates,*

3

*Series 2006-4*, 880 F.3d 1169, 1171 (10th Cir. 2018) ("*Mayotte I*") (declining to decide whether the *Rooker-Feldman* doctrine bars a federal-court challenge to a Rule 120 proceeding or ruling). The court based this decision on the purely legal issue of the nature and scope of the *Rooker-Feldman* doctrine and concluded that "there would be a *Rooker-Feldman* issue if the federal suit alleged that a defect in the state proceedings invalidated the state judgment. That was what *Rooker* was about—alleged violations of due process, equal protection, and the Contract Clause by the state court." *Id.* at 1174. The court concluded that because Plaintiff's claims only implicated the preclusive effect of the Rule 120 proceeding, they were not subject to *Rooker-Feldman*. *Id.* at 1176. The court affirmed the dismissal of the RESPA claim, because Plaintiff did not argue that issue on appeal. *Id.* at 1171.

### B. On Remand, Judge Jackson Concluded that the Claims Alleged in Plaintiff's Fourth Amended Complaint Failed as a Matter of Law.

On remand, Plaintiff amended her complaint and asserted claims for: (1) negligence; (2) negligent supervision and hiring; (3) violations of the Colorado Consumer Protection Act ("CCPA Claim"); and (4) declaratory judgment. [ECF 114.] Plaintiff and Defendants cross moved for summary judgment. [ECF 134, 136.] On November 29, 2019, the court denied Plaintiff's motion for summary judgment and granted Defendants' motion as to all claims.

Judge Jackson denied Plaintiff's motion for summary judgment because he disagreed with her two arguments regarding modification of the loan. First, Judge Jackson disagreed with Plaintiffs' argument that the "call notes" from the call where Wells Fargo allegedly told Plaintiff that she could miss three loan payments and receive a modification constituted a writing sufficient to serve as a loan modification under the CCPA. [ECF 169 at 16–18.] Second, "[i]n the interest of finality," Judge Jackson addressed Plaintiff's argument on novation and concluded

4

that two special forbearance agreements with Defendants did not supersede any alleged prior agreement for modification of Plaintiff's loan. [ECF 169 at 21–22.]

Judge Jackson agreed with Defendants that Plaintiff's claims were barred for two independent reasons. First, Judge Jackson agreed with Defendants that claim preclusion barred all of Plaintiff's claims because all of her claims could have been raised in the state court Rule 120 proceedings. [ECF 169 at 10–16.] Second, Judge Jackson agreed with Defendants' argument that Plaintiff's claims were additionally barred by the economic loss doctrine because all the claims she alleged arose from a breach of contract between herself and Defendants and were not based in any independent tort duties. [ECF 169 at 18–21.]

Lastly, Judge Jackson addressed Defendants' argument that Plaintiff failed to show any compensable damages and agreed that Plaintiff had not provided any evidence that her damages outweighed the benefit she derived from living in her home for free for nearly ten years. [ECF 169 at 22–23.]

### C. On De Novo Review, the Tenth Circuit Affirmed Judge Jackson's Merits Decision.

Following a de novo review of the order on the cross-summary judgment motions, the Tenth Circuit concluded that the economic-loss rule prevented the use of tort remedies for a lender's failure to carry out its promises. *Mayotte v. U.S. Bank Nat'l Ass'n as Tr. for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 985 F.3d 1248, 1250 (10th Cir. 2021) ("*Mayotte II*"). The Tenth Circuit also concluded that Plaintiff forfeited her argument that the economic-loss rule does not apply to the claim for violation of the CCPA or for a declaratory judgment because she failed to raise it in district court. *Id.* at 1253. Finally, the

court agreed that Plaintiff failed to present any evidence of non-economic harm. *Id.* Accordingly, the Tenth Circuit affirmed Judge Jackson's ruling on three legal grounds.

### D. In November 2021, Judge Jackson Disclosed that Either He or His Wife Owned Stock in Wells Fargo When He Presided Over this Case.

Nearly three years after Judge Jackson dismissed Plaintiff's claims and seven years after the case was first before him, on November 8, 2021, the Clerk of Court issued the Letter alerting the parties that Judge Jackson recently learned that while he was presiding over this case, he or his spouse owned stock in Wells Fargo. [ECF 193.] The Letter provides that the parties are "invited to respond to Judge Jackson's disclosure of a conflict in this case." [ECF 193.] Accordingly, Defendants file this response stating that Judge Jackson's disclosure of a conflict is not a basis to reopen or disturb the district court's judgment in this case for three reasons.

## ARGUMENT

### I. There Is No Legitimate Question About Judge Jackson's Impartiality in This Case.

The circumstances of this case raise no questions about Judge Jackson's impartiality. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 861 (1988) ("[T]t is critically important in a case of this kind to identify the facts that might reasonably cause an objective observer to question the judge's] impartiality."). Judge Jackson was unaware of the conflict at the time he presided over the case in 2016 and 2019. As such, when this case was proceeding in front of Judge Jackson, he had no obligation to disqualify himself based on a conflict that at first did not exist, and then of which he was not aware. *Liljeberg*, 486 U.S. at 861 ("[A] judge could never be expected to disqualify himself based on some fact he does not know, even though the fact is one that perhaps he should know or one that people might reasonably suspect that he does

know.") (discussing 28 U.S.C. § 455 which requires a judge to disqualify himself in certain circumstances, such as when he or his spouse has a fiduciary interest in the subject matter of the case).

Retroactive application of § 455, the recusal statute, is not warranted here because there is no basis to question Judge Jackson's impartiality in this case based on this stock ownership. A party may challenge a prior decision based on the subsequent discovery of facts requiring the judge's disqualification under Federal Rule of Civil Procedure 60(b)(6). *See Liljeberg*, 486 U.S. at 863–64 ("Section 455 does not, on its own, authorize the reopening of closed litigation."); *see also Driscoll v. MetLife Ins.*, No. 3:15-CV-01162-BTM-LL, 2021 WL 4710852, at *2 (S.D. Cal. Oct. 8, 2021) ("Federal Rule of Civil Procedure 60(b)(6) is the proper avenue to challenge a prior decision based on the subsequent discovery of facts requiring the judge's disqualification under § 455."). Rule 60(b)(6) allows federal courts to relieve a party from a final judgment "upon such terms as are just" provided that the motion is made within a reasonable time. *Liljeberg*, 486 U.S. at 863. Rule 60(b)(6) relief is to be granted only where such action is appropriate to "accomplish justice," and courts limit its application to "extraordinary circumstances." *Liljeberg*, 486 U.S. at 863; *McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006) ("[R]elief under Rule 60(b)(6) is extraordinary and reserved for exceptional circumstances."). This case does not present the extraordinary or exceptional circumstances that warrant Rule 60(b)(6) relief.

Ownership of stock in Wells Fargo had no bearing on the facts of this case. Plaintiff's suit presented no threat to Wells Fargo or its stockholders' financial positions. The key issue here was a question of law on a homeowner's ability to collaterally challenge state court foreclosure proceedings in federal court. Judge Jackson's ultimate holding on the legal issues at

the heart of this case – whether Plaintiff's claims were precluded by the state court proceedings or barred by the economic loss doctrine – could not have been influenced by his or his wife's unknown ownership of Wells Fargo stock.

## II. Two Tenth Circuit Reviews Assuage Any Doubts as to Judge Jackson's Impartiality.

Even assuming *arguendo* that there was some real question about Judge Jackson's impartiality – and there is not – any such question is made moot by the fact that this case was reviewed twice by the Tenth Circuit.  On the first review, the Tenth Circuit in fact reversed Judge Jackson's decision.  *Mayotte I*, 880 F.3d at 1171.  Thus even if Judge Jackson's decision in 2016 was colored by he or his wife's ownership of Wells Fargo's stock (it was not), the Tenth Circuit properly engaged in its error correcting function and reversed and remanded the case requiring Judge Jackson to consider the merits.  This proper functioning of the court system assuages any concerns about Judge Jackson's partiality.

The case was then reviewed a second time by the Tenth Circuit on de novo review of the merits.  *Mayotte II*, 985 F.3d at 1250 ("[W]e conduct de novo review of the award of summary judgment.").  This de novo review, wherein the Court of Appeals reviewed the law and record without deference to Judge Jackson's decision, assures that Plaintiff's case was treated fairly and impartially such that Rule 60(b)(6) relief from the district court's judgment would not be warranted.  *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) (stating that when the court reviews a decision de novo it applies "the same legal standards as did the trial judge" and "stand[s] in the shoes of a trial court").  Given that three judges of the Court of Appeals reached the same conclusion as Judge Jackson when they reviewed the questions of this

case anew and without deference to Judge Jackson, there is no doubt that Judge Jackson's or his wife's stock ownership did not cause the ultimate decision in favor of Defendants.

And, while the Tenth Circuit addressed only the economic loss issue and not the claim preclusion issue, these two issues presented two independent bases to dismiss Plaintiff's claims and affirmance of either alone was enough to affirm the dismissal of Plaintiff's claims. *Mayotte II*, 985 F.3d at 1250 n.1 ("The district court alternatively relied on other grounds, but we need not address those grounds.").

Finally, the Tenth Circuit concluded that Plaintiff forfeited before the district court her remaining argument that the economic loss doctrine did not bar her CCPA claim. *Mayotte*, 985 F.3d at 1253. Thus, it was Plaintiff's failure to develop her arguments, not any bias on the part of Judge Jackson, that caused Defendants to prevail.

### III.     The Interest of Finality Should Prevail and the Case Should Remain Closed.

Given the lack of prejudice and the independent confirmation of the judgment through the appellate process, the policy respecting the finality of judgments should be honored here. *Liljeberg*, 486 U.S. at 873 (Rehnquist, J. dissenting) ("This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved."). As stated, Judge Jackson ceased presiding over this case three years ago; the Tenth Circuit's judgment issued almost a year ago, after nearly seven years of litigation. Courts have a special interest in preserving the finality of judgments in order to increase certainty, discourage multiple litigation, and conserve judicial and party resources. *Yeager v. United States*, 557 U.S. 110, 118 (2009); *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The tools that may be used to reopen a final judgment, such as Rule 60(b)(6), are to be used sparingly and only in the most extraordinary of circumstances.

*Liljeberg*, 486 U.S. at 863; *McGraw*, 450 F.3d at 505.  As discussed, this case does not present those extraordinary circumstances:  there is no legitimate challenge to Judge Jackson's impartiality and the independent appellate review in this case reaffirmed his decision.  Accordingly, the interest of finality should prevail here.  The Court should take no action based on Judge Jackson's disclosure of this conflict.  This case should remain closed, and the final judgment should stand.

## CONCLUSION

In response to the Letter, Defendants state that the Court should take no action based on Judge Jackson's disclosure of this conflict, as explained above.  This case should remain closed, and the final judgment should stand undisturbed.

Dated:  January 4, 2022.

Respectfully submitted,

SNELL & WILMER L.L.P.

*s/ Gregory Marshall*
Gregory Marshall #19886
Anna Adams #51218
1200 Seventeenth Street, Suite 1900
Denver, Colorado 80202
Telephone: (303) 634-2000
Facsimile: (303) 634-2020

***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 4, 2022, a true and correct copy of the foregoing **DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSE TO LETTER FROM CLERK OF COURT** was filed and served via Colorado Courts E-Filing on the following:

Brad Kloewer
Cain & Skarnulis PLLC
bkloewer@cstrial.com
(303) 910-2734
*Attorney for the Plaintiff*

*s/Maegann Parsons*
for Snell & Wilmer L.L.P.